WAHLGREN et al. v. BAUSCH & LOMB
OPTICAL CO. et al.
No. 5435.

Circuit Court of Appeals, Seventh Circuit.
May 15, 1935.

Rehearing Denied June 18, 1935.

Charles Hudson and Benj. F. J. Odell, both of Chicago, Ill., for appellants.

John D. Black and George B. Christensen, both of Chicago, Ill., for appellees.

Before SPARKS, FITZHENRY, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from an interlocutory order of injunction [1] restraining appellants and others from disposing of, transferring, secreting, etc., their assets until further order of the court.

Appellees' petition [2] whereon the injunction was ordered set forth that on November 30, 1934, the master in chancery to

---

[1] "This cause coming on to be heard upon the petition of the plaintiffs for an order restraining defendants from disposing of their assets until further order of this Court, and the Court having considered the record heretofore made in this Court, as well as the proceedings in the Circuit Court of Appeals and being fully advised in the premises, it is

"Ordered, Adjudged and Decreed that until the further order of this Court in the premises, that defendants, Oscar G. Wahlgren, Roy M. Wahlgren, Benjamin J. F. Odell, Earle G. Wahlgren, Dalton W. Bradley, Leland Davis, their agents, servants, attorneys and counsellors be and hereby are restrained and enjoined from in any way disposing of, hypothecating, transferring, assigning, encumbering or secreting any of their assets, whether the same be real or personal property, choses in action or anything of value whatsoever and that the said defendants, their agents, servants, attorneys and counsellors be restrained and enjoined until further order of this Honorable Court in the premises from removing any of their property or assets beyond the jurisdiction of this Court.

"Dated Dec. 4, 1934."

[2] "Now come the plaintiffs and show to the Court that on the 30th day of November, 1934, his Honor Thomas J. Peden, Master in Chancery herein, to whom the cause has been referred by order of February 1, 1934, to take proof and report his recommendations with respect to alleged contempts by defendants herein,

served upon counsel herein a draft report wherein and whereby, among other things, he recommends that fines for contempt of court be levied against the following defendants in the following amounts: Oscar G. Wahlgren $257,977.73; Roy M. Wahlgren $257,977.73; Benjamin J. F. Odell $257,977.73; Earle G. Wahlgren $42,441; Dalton W. Bradley $34,199 and Leland Davis $6,123.

"Plaintiffs further show to the court that great animosity exists between the plaintiffs and said defendants herein, and that said defendants are likely to secrete, hide or transfer their assets for the purpose of preventing collection of said fines and frustrating plaintiffs' remedy.

"Wherefore plaintiffs pray that until this matter can be further heard, and until the further order of this Honorable Court in the premises, that an order be entered herein restraining and enjoining the said above named defendants, their agents, servants, attorneys and counsellors from in any way disposing of, hypothecating, transferring, assigning, encumbering or secreting any of their assets, whether the same be real property, personal property, choses in action or anything of value whatsoever until further order of the court in the premises, and that the said defendants, their agents, servants, attorneys and counsellors be restrained and enjoined until further order of this Honorable Court in the premises from removing any of their property or assets beyond the jurisdiction of this Court."

whom the cause had been referred to take proof and report recommendations with respect to contempts of court alleged to have been committed by the appealing and other defendants, had served upon counsel for appellees a draft report wherein it was recommended that fines for contempt of court, each in the amount of $257,977.73, be levied against the three appealing defendants, and in other and smaller amounts against other defendants not appealing. The petition further sets forth that great animosity existed between the plaintiffs and the defendants in the cause, and that the defendants were likely to secrete or transfer their assets for the purpose of preventing collection of the fines and frustrating plaintiffs' remedy.

An order was entered December 24 directing that the injunction of December 4 "be construed as to allow ordinary and reasonable expenses of living and business and incidentals thereto."

The transcript of record herein discloses only the verified petition as basis for the injunctional order. In the order it is recited: " * * * and the Court, having considered the record heretofore made in this Court, as well as the proceedings in the Circuit Court of Appeals * * *." What record of the District Court was thereby meant does not appear, unless we assume it to be such as was brought before this court in a previous appeal from a final decree in the action of March 22, 1933, awarding these appellees a permanent injunction restraining certain of these appellants from violating certain restrictive covenants of an agreement to refrain for a specified time from entering into or carrrying on, directly or indirectly, a specified business. Upon appeal to this court, that decree was affirmed. 68 F.(2d) 660.

The issue in the instant case which was referred to the master was not as to the merits of that controversy, but as to whether, and, if so, to what extent, the defendants had been guilty of contempt of the court in transgressing the temporary and permanent injunctions which the court had theretofore awarded. But the issue here is not even as to the merits of the alleged contempt, but only as to whether, pending adjudication of that matter, it was proper to restrain appellants from disposing of their property.

While the petition alleges that appellees' counsel had been served with a draft of a proposed master's report, that report was not before the court. Indeed, it had not yet been filed in court. Pursuant to the usual practice, the draft was submitted to counsel to enable them to submit to the master their objections to the report for his consideration and disposition before the report was actually filed. So far as the court was concerned, at the time of the entry of the order here complained of there was no master's report. It had not been filed, and it does not appear that the court knew it existed. During the pendency of this appeal appellees asked and were granted leave to present here the master's report, and it was so presented in this court April 8, 1935; and from the file marks thereon it appears to have been filed in the District Court February 26, 1935, several months after the date of the restraining order here in issue. Furthermore, there is nothing to indicate that the District Court has ever approved the report, or that up to the present time that court has considered it, or exceptions thereto, if any there are.

So far as the reference to the record of the District Court, in the order appealed from, may be considered as indicated by the transcript which was before us on the former appeal, not a single item thereof has been called to our attention by counsel for appellees that would tend to support the order.

The transcript upon that appeal consisted of nearly 3,000 pages of typewritten condensation of the vastly larger transcript of the evidence given in the cause, plus over 300 pages of printed matter, which form of presentation was authorized by the court upon stipulation of counsel. Assuming that the transcript of record on that appeal may be used in considering this appeal, it is hardly to be expected that this court will narrowly search that record to see if perchance it discloses items which might lend support to the order here in issue. The least that might reasonably be expected is that such items, if any there are, would be definitely pointed out in counsel's brief. But in the entire absence of such specification, we may well assume that record gives no support to the order here appealed from.

The petition for the injunction was predicated wholly upon the allegations (a) that the master had submitted to appellecs' counsel a tentative report recommending that large fines be assessed against appellants; (b) that there was great animosity between the plaintiffs and the defendants; and (c) that the defendants were likely to secrete, hide, or transfer their assets for the

purpose of preventing collection of the fines and frustrating plaintiffs' remedy.

Upon principle, it seems to us that this is not a sufficient basis for tying up the assets of a defendant in advance of decree. That animosity has been engendered in this greatly protracted litigation is to be expected. Indeed, human nature is such that most cases of warmly contested litigation develop animosities of varying degrees of intensity. If this afforded ground for such an order, any defendant against whom a decree is a possible outcome of litigation may be enjoined from disposing of his property, and few indeed would be the contested cases wherein defendants might not be thus enjoined for the mere asking.

Right to such an order is not helped by the allegation that a defendant is likely to secrete or dispose of his property. Any one may be likely to do this; that is, he may do so. But unless there is made to appear some definite manifestation that he will so do, the mere likelihood, though coupled with animosity, is not sufficient to invoke the court's injunctive process.

At law, one's property may be tied up in advance of judgment through the process of attachment, but neither apprehension nor allegation of likelihood not supported by facts which tend to show its imminence would be sufficient to invoke that remedy. We think this would be not less true in chancery unless there are adduced specific facts which would indicate such a course to be indispensable to the doing of equity between the parties. The animosities of the parties, or even an aggregated infraction by defendants of the rights of plaintiffs, are not of themselves, nor together, enough to tie up one's property in advance of a decree of the court adjudging the rights of the parties.

We have searched vainly for precedents. None has been cited which in our judgment authorizes such a course. Appellees plant their reliance on Zenith Carburetor Co. v. Stromberg Motor Devices Co. (C. C. A.) 270 F. 421, which was decided by this court. There Stromberg Company had secured a decree finding that Zenith Company had infringed Stromberg's Ahara patent for an inner combustion engine, and ordering an accounting of damages, and ordering reference to a master for that purpose. That decree was, on appeal, sustained in the main by this court. 254 F. 68. A French corporation, or its stockholders, owned all the stock of Zenith Company, a Michigan corporation, and the Zenith Company was sending monthly to the parent corporation in France large sums of money as royalties on patents controlled by the French corporation, and as dividends. There was reason to believe that the moneys which had been and were continuing to be sent abroad were largely, if not entirely, avails arising from the infringing operations, and were thus impressed with a trust in favor of Stromberg Company; also, that the continued sending abroad of these large sums (some months as much as $30,000) would so reduce the assets available to meet such damages as might be awarded as to deprive Stromberg Company of the benefit of any decree which it might obtain upon the accounting. The court thereupon restrained Zenith Company from disposing of its assets by sending money beyond the jurisdiction of the court or by sending abroad to the French corporation any funds or assets of any kind, for alleged royalties or to pay alleged debts or to reduce the Zenith Company's assets available to meet such decree as the court might render. In modifying somewhat the restraining order, the court issuing it commented upon the quite unusual circumstances under which it was issued—the large amount of money sent to the French company on account of dividends and royalties arising from the very devices which had been adjudged to infringe.

There it appeared the main controversy had been definitely adjudicated in the infringement suit wherein a reference for an accounting for damages had been ordered. The original bill in the instant case, as appears from the transcript of record in the prior appeal therein, sought only an injunction, and made no claim whatever for damages; and the decree in that suit did not deal with damages, and ordered no reference for an accounting for damages. There it appeared that the funds which had been and were being, and would continue to be, sent abroad were funds arising largely if not wholly from the past and continued transgressions by Zenith Company of the Stromberg rights, and were thus impressed with a trust therein. Here no such condition appears. Indeed, there is nothing in the record to indicate whether or not these defendants had any property, or, if they had property, that it was impressed with any trust in appellees' favor, or that they had put any of their property beyond reach of the court, or that they were threatening to do so, or that there was anything unusual

or extraordinary about the past, present, or future operations of these defendants respecting their own property as to invoke any such a restraining order in advance of any money judgment or decree against them. That case affords no precedent to support the order here assailed.

It is at least interesting to note the state of the record respecting appellant Odell. Referring to the record on the first appeal, we find that Odell was a party defendant to the original suit; that after the hearing, resulting in the very voluminous record above referred to, the master recommended that the bill be dismissed as to Odell, and the final decree dismissed the action as to him. No appeal appears to have been taken from this decree in his favor. In what manner he was thereafter again brought into the case as a party defendant, the record before us is silent.

We perceive here no sufficient basis for the order here in issue, and it is accordingly reversed, and the cause is remanded to the District Court with direction to vacate the order appealed from.