MARTIN et al. v. JAMES B. BERRY SONS'
CO., Inc., et al.

No. 3126.

Circuit Court of Appeals, First Circuit.

May 23, 1936.

Roger L. McCarthy, of Providence, R. I. (Ira Lloyd Letts, of Providence, R. I., on the brief), for appellants.

Arthur M. Allen, of Providence, R. I. (William A. Gunning and Noel M. Field, both of Providence, R. I., and J. V. Frampton, of Oil City, Pa., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This appeal involves also three other appeals from decrees of the federal District Court for Rhode Island dismissing the bills of complaint of the four plaintiffs; and by agreement of the parties the four appeals are to be determined on the record in the suit of Manuel Luiz Martin; the allegations and prayers being the same in each suit.

The defendant company, hereinafter referred to as the Berry Company, is a Pennsylvania corporation, but was registered and doing business in the state of Rhode Island, and had been engaged in constructing on its premises in Tiverton in said state the foundation for a storage tank for oil, on which the Graver Tank & Manufacturing Company erected an 80,000-barrel storage tank.

Each of the plaintiffs is alleged to have been engaged in equipping the premises

of the Berry Company with a pipe line to be used in connection with the storage tank, when the tank, having been filled with salt water from the nearby bay, collapsed and severely injured the plaintiffs.

The bills of complaint, originally brought in the superior court for Providence county in the state of Rhode Island, each alleged that the collapse of the tank was due to the negligence of the Berry Company; that the only property of the Berry Company within the state of Rhode Island consisted of indebtedness owed to it by the Pennsylvania Petroleum Products Company, a Rhode Island corporation, and "evidenced by notes, or trade acceptances, held by the Berry Company beyond the State of Rhode Island"; that on information and belief each plaintiff alleged that the Berry Company is about to transfer the negotiable instruments to compel the plaintiffs to resort to a foreign jurisdiction to obtain satisfaction of any judgments it might secure against the Berry Company in the state of Rhode Island.

The prayers of each bill are, in effect, that the Berry Company be restrained and enjoined from transferring its claim against the Pennsylvania Petroleum Products Company; that the Pennsylvania Petroleum Products Company be restrained from paying the Berry Company the said notes, or trade acceptances; that the assets of the Berry Company in the hands of the Pennsylvania Petroleum Products Company be declared subject to and subjected to any judgment which the plaintiffs may recover in this action at law against the Berry Company; and that the Pennsylvania Petroleum Products Company be ordered to pay to the plaintiffs out of such funds the amount of any judgment they may obtain in such action.

On application to the state court restraining orders were issued against the defendants on an ex parte hearing on October 2, 1935, upon the filing of the bills.

On motion of the Berry Company the four equity cases were removed from the state court to the federal District Court for the District of Rhode Island.

It appears from the record that on the same day as the bills of complaint were filed in the state court actions at law were begun in the state court by the plaintiffs against the Berry Company for negligence, and service was duly made on an agent of the Berry Company in the state of Rhode Island, which suits were removed to the district court for Rhode Island and are now pending in that court, but in which no trial or judgment has been had.

The amount the plaintiffs seek to recover in the four suits totals $75,000; the ad damnum in each case exceeding $3,000.

The Berry Company, within the time limited by statute, filed in each equity suit a motion to dismiss, which, under Federal Equity Rule 29 (28 U.S.C.A. following section 723), has the force and effect of a demurrer.

In substance, the motions to dismiss the equity suits were predicated on the following facts: (1) That it did not appear from the bills of complaint that any judgment had been obtained against the Berry Company by the plaintiffs, and that the plaintiffs had exhausted their legal remedies; (2) that the bills contained no allegation that the Berry Company is insolvent or had absconded, and had left the jurisdiction of the state so that it could not be served with process; (3) that it appeared in the bills that it was, in effect, an attempt to levy equitable attachment upon assets exempt from attachment under the Rhode Island statutes; (4) that it did not appear from the bills that any judgment obtained against the Berry Company in the law actions were uncollectible, unless the promissory notes, or trade acceptances, were made available to the plaintiffs, or that the Berry Company was about to make a conveyance of its assets in fraud of its creditors, or otherwise perpetrate a fraud. The motions to dismiss were granted after a full hearing and filing of briefs on February 7, 1936.

The appeal in each case is based on the following assignment of error, the first assignment as to jurisdiction of the district court being waived, viz.: Because the defendant Berry Company is a foreign corporation; that its only property or property rights within the jurisdiction of the court consisted of indebtedness owed to it by the Pennsylvania Petroleum Products Company and evidenced by negotiable promissory notes, or trade acceptances, which it averred were about to be transferred by the Berry Company for the purpose of removing them from the jurisdiction of the court and compel

the plaintiffs to resort to a foreign judgment for satisfaction.

It may be noted in passing, however, though no point is made of it in argument and we do not decide the case on that ground, that there is an allegation in each complaint which may be inconsistent with its right to invoke the aid of a court of equity, viz.: That the plaintiffs were, when injured, lawfully on property owned by and under the control of the defendant situated in the town of Tiverton in the state of Rhode Island, which it does not appear was not subject to be levied on in satisfaction of any judgment obtained against it.

The complainants rely on the general equity powers of the federal courts to supply a remedy where the complainants have no plain, adequate remedy at law, and the rule that the adequate remedy at law, in order to deprive an equity court of jurisdiction, must be as complete, prompt, and efficient as that provided in equity. While these are general statements as to the jurisdiction of courts of equity, with the development of equity jurisprudence, the field between law and equity has come to be more definitely defined. There must first be a recognized ground of equity jurisdiction, though the method of affording relief is not confined to hard and fast rules.

This is not a creditor's bill, though it seeks to reach property not attachable at law. If it were, it must be alleged that the plaintiffs had exhausted their legal remedies by recovering judgment and alleging a return of an execution nulla bona, unless it is alleged that the defendant is insolvent or is a nonresident, or has absconded and service cannot be made on it. 15 C.J. 1388, § 16; Smith v. Ft. Scott Railroad Co., 99 U.S. 398, 401, 25 L.Ed. 437; National Tube Works Co. v. Ballou, 146 U.S. 517, 13 S.Ct. 165, 36 L.Ed. 1070; Scott v. Neely, 140 U.S. 106, 110, 11 S.Ct. 712, 35 L.Ed. 358; Blandon et al. v. Guy et al., 60 App.D.C. 318, 53 F.(2d) 930, 931; Webster v. Clark, 25 Me. 313, 314; Ginn v. Brown, 14 R.I. 524; First National Bank of Shreveport v. Randall, 20 R.I. 319, 38 A. 1055, 78 Am.St.Rep. 867.

The only grounds on which the plaintiffs rely in these unusual proceedings is that their tort actions are not an adequate, prompt, and efficient remedy, inasmuch as the indebtedness of the Pennsylvania Petroleum Products Company evidenced by negotiable promissory notes, or trade acceptances, is not attachable on legal process, and the plaintiffs allege that these promissory notes, or trade acceptances, are the only means of satisfying any judgment they may recover in their respective actions within the jurisdiction of this court, and that they are about to be transferred or negotiated, and as a result the plaintiffs may be compelled to resort to a foreign jurisdiction to obtain satisfaction of any judgment they may obtain at law.

It does not appear, however, that any judgment obtained against it could not be collected in the Pennsylvania courts in case it was not voluntarily satisfied; or that to be compelled to have recourse at law to secure satisfaction in Pennsylvania may not be equally as prompt and efficient as a resort to equity to sequester a debt due on promissory notes, or trade acceptances, to satisfy a judgment obtained at law in a tort action in Rhode Island. Nor does it definitely appear from the complaints that the amount due, or to become due on the notes, or trade acceptances, if collectible, will satisfy in full any judgments the plaintiffs may obtain in their tort actions, and they may be compelled finally to have to resort to the Pennsylvania courts to obtain full satisfaction of their claims, and their remedy by these proceedings would not be as complete or any less prompt than if they had first obtained judgment in their tort actions, and, in case their judgments were not satisfied, had recourse to the Pennsylvania courts for their full satisfaction.

The plaintiffs do not allege any equitable lien or claim on this indebtedness. Their bills, if sustained, would merely amount to a garnishment of the indebtedness evidenced by these notes or trade acceptances.

The only cases cited by the plaintiffs sustaining such bills in the nature of a garnishment of indebtedness are Steam Stone-Cutter Co. v. Sears (C.C.) 9 F. 8 (decided in the District of Vermont in 1881), and Steam Stone-Cutter Co. v. Jones, 13 F. 567, 581 (decided in Vermont Circuit Court in 1882). These cases were decided when a rule of the circuit court for Vermont adopted the Vermont practice of issuing writs of attachment in equity. Although the court in the Jones

Case, supra, said that "no such process is known in general equity practice," it was held that U.S.Rev.Stat. § 913 (28 U.S.C.A. § 723), permitted the lower federal courts to adopt by rule the state statutes or practice with respect to attachments in equity, and that the circuit had by its rule 11 adopted the Vermont practice with respect to such attachments.

Recently, however, in Ross v. Grafton Power Co. et al. (D.C.) 60 F.(2d) 663, it was held that, following the abolishment of circuit courts and the abrogation of its rules, including rule 11, and the adoption of rules 7 and 8 of the Federal Equity Rules (28 U.S.C.A. following section 723), prescribed by the United States Supreme Court, writs of attachment or sequestration are appropriate only for the enforcement of interlocutory or final orders or decrees of the court, neither of which exist in this case.

Such an ancillary or supplementary writ of attachment was unknown to the common law, or to the practice and use in equity in either England or the United States, and is a statutory remedy. There is no statutory authority for the issuance of such a writ in an equity suit in a federal court; and the United States Supreme Court by its rule 7 of equity practice, promulgated under the authority vested in it in section 917, R.S. (28 U.S. C.A. § 730), has provided for such an ancillary writ or supplementary writ only to enforce interlocutory or final orders or decrees.

In Bucyrus Co. v. McArthur (D.C.) 219 F. 266, 269, the plaintiff in an equity suit applied for a writ of attachment pursuant to the practice in the Tennessee state courts. The court said:

"Such ancillary attachment of the defendant's property is, however, a purely statutory remedy, in derogation of the common law. 1 Shinn on Attachment, § 8 (g), p. 10; 4 Cyc. 396, and cases cited in note 3; 3 Am.&Eng.Enc.Law (2d Ed.) 184. It is entirely unknown to the immemorial practice and usage of Courts of Equity, either in England or in the United States, and is essentially a legal remedy, which, in the absence of statutory authority, is not available in equity. * * *

"There is, however, no statutory authority for the issuance of such an attachment in an equity cause in a Fed-

eral Court. * * * Neither has the Supreme Court of the United States, in promulgating the Rules of Equity Practice in the District Courts, under the authority vested in it by section 917 of the Revised Statutes, provided for such ancillary writs of attachment. Nor is provision made therefor by any rule of this court."

Neither the statutes of Rhode Island nor the rules of the federal District Court for that state authorize the issuance of such a writ of attachment or sequestration. Chapter 349, § 27, of the statutes of Rhode Island (Gen.Laws 1923), authorizes the issuance of a writ of attachment in certain cases, but provides that they "shall * * * be subject to like incidents as a writ of attachment at law"; and chap. 352, § 5, provides: "The following goods and property shall be exempt from attachment on any warrant of distress or on any other writ, original, mesne, or judicial"; and by subdivision 11 of this section "debts secured by bills of exchange or negotiable promissory notes" are exempt. Also see Greene v. Keene, 14 R.I. 388, 397, 51 Am.Rep. 400.

The inequity of maintaining such bills as these without asserting any equitable claim on a fund, as on the indebtedness of the Pennsylvania Petroleum Products Company, and without first establishing a valid claim against the defendant in a court of law, and to obtain an order of the court of equity enjoining the defendant Berry Company from the right to collect its receivables in order to save the plaintiffs from the necessity of enforcing their judgments in a sister state, may result in great inconvenience to the defendant by thus involving its working capital.

Without statutory authority, or a rule of court authorizing it, the weight of authority is against the equity court sequestrating a defendant's assets on the complaint of a tort claimant whose claim has not been reduced to judgment at law or by enjoining the defendant from transferring such assets. The law is summarized in 27 C.J. 863, 864.

In Friedling v. Freedman, 44 App.D.C. 191, the court said in substance:

"A court of equity is without jurisdiction to enjoin such a conveyance by a possible debtor to await the future possibility of a judgment in favor of a creditor whose status, as such, depends upon the outcome of a pending suit. Before

such equitable relief in an independent action can be invoked, there must be an existing judgment at law or a fixed and definite claim, which either is or can be made a lien upon the specific property."

The court in Blundon et al. v. Guy et al., supra, expressed the same view as follows:

"The rule, we think, is elementary that a general creditor must obtain a judgment before he can have relief against his debtor in equity, and in Tate v. Liggat, 2 Leigh (Va.) [84] 91, it was said that the rule is founded upon the principle of the common law that it is essential to the enjoyment and circulation of property, that every debtor, until his property is specifically bound to the satisfaction of his debt by his own agreement or by some judicial proceeding, has an absolute right to dispose of it at pleasure, to prefer one creditor to another, or even to waste or destroy it; a power which no tribunal has authority to control or limit."

In O'Day v. Ambaum, 47 Wash. 684, 92 P. 421, 422, 15 L.R.A.(N.S.) 484, the court said:

"It was not alleged, nor was it contended, that they had obtained any judgment against the respondents or lien against their property, that they had commenced any action to recover damages, or that their damages had been liquidated. A simple contract creditor cannot prior to obtaining a judgment or lien attack as fraudulent his debtor's transfer of nonexempt property which might be applicable to the payment of his claim, nor can he sustain an action to enjoin a threatened fraudulent transfer of his debtor's property until he has obtained a specific lien upon such property. * * * Mr. Bump, in his work on Fraudulent Conveyances, at section 526, says: 'It is only by the acquisition of a lien that a creditor has any vested or specified right in the property of his debtor. Before such lien is acquired, the debtor has full dominion over his property. He may convert one species of property into another, and he may alienate to a purchaser. The rights of the debtor and those of the creditors are thus defined by positive rules, and the point at which the power of the debtor ceases and the rights of the creditors commence is clearly established. A creditor without such lien cannot obtain an injunction to prevent the debtor from disposing of his property, although he has reason to apprehend that such disposition may be fraudulent.'"

 It is clear, we think, that such a suit is not maintainable in equity, there being no allegation that the defendant is insolvent or has absconded, or, with intent to defraud the plaintiff, has disposed of its property, or that it will not pay any judgment, if one is obtained against it. It does not render the remedy at law inadequate or uncertain that the plaintiffs may have to resort to the courts of a sister state to obtain satisfaction. Birdsall v. Fischer, 17 Minn. 100 (Gil. 76, 82); Tone v. Brace, 8 Paige (N.Y.) 597, 600.

They cannot be maintained as bills to prevent fraudulent conveyances because of the lack of the necessary allegations, and, further, because the plaintiffs have no lien upon or any interest in the property sought to be sequestered, 27 C.J. 863, 864; nor can they be maintained on the facts set forth in the complaints as bills to levy equitable attachments, since there is no federal authority for such a process either by statute or under the equity rules either of the Supreme Court or the federal District Court for Rhode Island.

The decree of the District Court in each case is affirmed, with costs.