**BLYTHIN, TRUSTEE ETC., Plaintiff-Appellee, v ZANGERLE ETC., ET AL., Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20648.   Decided October 13th, 1947.

Alexander Mintz, Cleveland, for plaintiff-appellee.

Frank T. Cullitan, Prosecuting Attorney, Cleveland, and Saul S. Danaceau, Asst. Prosecuting Atty., Cleveland, for defendants-appellants.

## OPINION

By HURD, PJ.

This action in equity for injunctive relief is here on appeal on questions of law and fact from a judgment of the court of common pleas of Cuyahoga county, wherein the defendants were enjoined from assessing and attempting to collect assessments for personal property taxes for the years 1941 and 1942,

charged against The North American Mortgage Loan Company, plaintiff's-appellee's predecessor. The trial court held that The North American Mortgage Loan Company was a Dealer in Intangibles and not subject to liability as a general taxpayer as claimed by the defendants.

Defendants-appellants on this appeal contend that the plaintiff-appellee is not entitled to injunctive relief claiming error on the part of the trial court on two grounds which we shall consider in the order set forth, as follows:

"1. The North American Mortgage Loan Company, plaintiff's predecessor, was not in 1941 and 1942 a dealer in intangibles as defined in §5414-1 GC.

2. The failure of the plaintiff to avail himself of his statutory remedies, bars injunctive relief under §12075 GC, against the collection of assessments for personal property."

By agreement, the case is submitted to this court on the record in the trial court. Of major importance is a stipulation that in the instant case all the facts cited in the opinion in the case of **Shuster v Mortgage Loan Co., 139 Oh St 315,**[1] are to be taken as the accepted facts herein so that everything that is said there, so far as it is pertinent to the issues in this case, may be treated as part of the record in this case.

An examination of the facts in the case of Shuster v Mortgage Loan Company, supra, discloses that the controversy involved therein is an outgrowth of the failure of the North American Trust Company,[2] a banking corporation, to meet its obligations in the regular course of business in the year 1933, resulting in the assumption of jurisdiction by the Superintendent of Banks under the provisions of §718-88 (a) GC.

A plan for the reorganization of the bank under the code[3] involved the paying off of an obligation to Reconstruction Finance Corporation and a waiver by the bank's depositors of 80% of the respective deposits. To accomplish this it was agreed that a new corporation, to be known as North American Mortgage Loan Company, should be organized and certain assets of the bank transferred to the mortgage loan company.

---

1. The supreme court in this case affirmed the court of appeals of this district (§18025, decided June 23, 1941 without a written opinion).

2. For brevity and convenience the North American Trust Co. will hereinafter be referred to as the "bank", The North American Mortgage Loan Co., as "mortgage loan company"; plaintiff appellee as "plaintiff" and defendants appellants as "defendants" as they appeared in the trial court.

3. *Sec. 710-89(a) GC.*

This plan enabled the mortgage loan company to secure a new loan from Reconstruction Finance Corporation, sufficient to pay off the bank's obligations thereto, and to furnish a liquid condition for the new bank which resulted from the reorganization.

The plan of reorganization approved by the Superintendent of Banks and the common pleas court is evidenced by a written agreement which is an exhibit in this case. It was provided as part of the plan that the mortgage loan company,

"shall as soon as practicable, issue * * * non-negotiable instruments to be known as Certificates of Participation which said instruments shall in no manner be a liability of said bank. Each said Certificate of Participation shall not bear interest and shall evidence a pro rata interest in the assets transferred by said bank to said mortgage loan company and shall, upon request, be delivered to the depositor or claimant of the bank, entitled thereto * * * said mortgage company shall * * * apply cash realized from the liquidation of the assets so transferred to it by the bank * * * in payment of said Certificates of Participation."

It would unduly lengthen this opinion to restate here the facts set forth at length in the case of Shuster v Mortgage Loan Company, and to restate here the careful analysis of the agreement of reorganization in question which is contained in the opinion of the supreme court. We think it sufficient to state that upon the incorporation of the mortgage loan company, the bank by proper instruments of conveyance, delivered to the mortgage loan company the assets of the bank found by the superintendent of bank to be ineligible to remain therein and such further assets as were required to secure a loan sufficient to discharge the obligation of the bank to Reconstruction Finance Corporation and that the mortgage loan company made an additional advancement of cash in order to improve the liquid condition of the bank.

The North American Mortgage Loan Company was thereafter incorporated with a maximum number of authorized shares of 250, all of which were common shares without par value and the amount of the capital was fixed at $500.00. It appears from the record that the mortgage loan company was organized for the purpose of liquidating the frozen assets of the bank and of distributing the proceeds of the liquidation for the benefit of depositors, creditors and stockholders of the closed bank.

Thereafter, in October, 1942, in an action pending herein, this court of appeals, removed the mortgage loan company as trustee under the trust which had been created by the common pleas court of Cuyahoga county in August of 1934, and appointed the plaintiff, Edward Blythin, as successor trustee.[4]

For the years in question involving the assessments complained of, the mortgage loan company filed with the proper tax authorities property tax returns but filed as a Dealer in Intangibles rather than as a Fiduciary and general taxpayer. The difference between the two is that a Dealer in Intangibles under our tax laws does not pay on the intangibles which comprise the dealer's stock in trade but rather on the paid-in capital which in this case would be nominal, whereas a general taxpayer pays on the value of the intangibles which it owns.

In the instant case the tax commissioner fixed the tax in the sum of $1001.58 for the year 1941, and in the sum of $882.95 for the year 1942, and these items were certified for collection.

The supreme court in the Shuster case found that the mortgage loan company was created to act in a dual capacity as owner and trustee, the court stating that as between the bank and the mortgage loan company there was merely a contract relationship but as between the mortgage loan company and its certificate holders, who were in fact the equitable owners of the assets, there was a relationship of trustee on the one hand and of beneficiaries on the other.

We have examined the record and the facts set forth in Shuster v Mortgage Loan Co., and all of the stipulations of the parties and the exhibits which are a part of the record, and have reached the conclusion that plaintiff's predecessor mortgage loan company, was not a dealer in intangibles during 1941 and 1942, nor during any other period covered by the record before us.

The term "Dealer in Intangibles" is defined by §5414-1 GC.[5] We think it clear from an analysis of the statute in relation to the facts herein that plaintiff's predecessor does not come within the purview of this statute. It is stipulated that there were casual or isolated transactions with respect to securities in the hands of the liquidating corporation but under the

4. See case of *Shuster* v *North American Mortgage Loan Co*. §18025 on docket of this Court of Appeals, decided 6/23/1941 and affirmed by the supreme court, *139 Oh St 315*.

5. *Sec. 5414-1 GC* (Dealer in Intangibles defined). The term 'dealer in intangibles' as used in this chapter includes every person who keeps an office or other place of business in this state and engages at such office or other place of business of lending

statute this is not sufficient to qualify as a dealer in intangibles.

It might be argued that the directors of the mortgage loan company attempted to exercise the powers of a dealer in intangibles when according to the record in the Shuster case they sold securities having a value of $202,101.84 and with the proceeds purchased other stocks and securities. The court held that such conduct was ultra vires and that the directors were guilty of a breach of trust.

In our opinion, the mortgage loan company was strictly a liquidating corporation organized for the sole purpose of realizing as much as possible for the benefit of the depositors, creditors and stockholders of the bank and that at all times it was acting in a trust or fiduciary capacity. In this respect its position was precisely the same as other fiduciaries appointed to liquidate assets either as assignees for the benefit of creditors or as fiduciaries appointed by a court.[6]

This conclusion is supported by the law of the case in

money, or discounting, buying or selling bills of exchange, drafts, acceptances, notes, mortgages or other evidences of indebtedness, or of buying or selling bonds, stocks or other investment securities, whether on his own account with a view to profit or as agent or broker for others, with a view to profit or personal earnings. Said term as so used excludes institutions used exclusively for charitable purposes, insurance companies as defined in this chapter and persons engaging in the business of receiving deposits as defined in this chapter and herein designated as 'financial institutions.' Neither casual or isolated transactions of any of the kinds enumerated in this section, nor the mere investment of funds as personal accumulations or as business reserves or working capital shall constitute engaging in business within the meaning of this section; but a person who, having engaged in the business of lending money or discounting, buying or selling bills of exchange, drafts acceptances notes or mortgages, or other evidences of indebtedness on his own account, remains in business for the purpose of realizing upon the assets of such business shall be deemed a dealer in intangibles though not presently engaged in lending money or discounting or buying such securities."

See:—

6. *Sec 5370 GC* which provides as follows:

"Sec 5370 * * * taxable property belonging to the persons named or indicated shall be returned by the fiduciaries named:

"* * * and that of persons whose assets are in the hands of receivers, assignees for the benefit of creditors, trustees in bankruptcy or official custodians, by such receivers, assignees, trustees in bankruptcy or official custodians."

In §5366 GC defining the word "taxpayer" it is said that the word "taxpayer" means any owner of taxable property and includes:

(c) fiduciaries appointed by any court in this state or having title, possession or custody of taxable personal property in this state or engaged in business in this state."

Shuster v Mortgage Loan Company as indicated by the 2nd, 4th and 5th paragraphs of the syllabus.[7]

The court at page 339 of the opinion in Shuster v Mortgage Loan Company said:

"Not only the plan and the contract but the order of the court of common pleas of Cuyahoga county, show clearly that a trust was created for the purpose of **liquidation and distribution of proceeds** to the holders of the Certificates of Participation." (emphasis by supreme court)

We think the essential statutory requirements for a dealer ▉ in intangibles as defined by §5414-1 GC make it clear that one must operate such a business either as a broker for others or individually on his own account with a view to profit; that neither casual nor isolated transactions are sufficient and that in case of liquidation only one who is previously engaged in such business as a dealer in intangibles may have the benefit of the statute during a process of liquidation.

The plaintiff's predecessor had not been previously engaged in the business of a dealer in intangibles. It was not in any sense a successor to the bank. It was a trustee under an express trust created for a single purpose, namely, to liquidate certain ineligible securities previously held by the bank.

Plaintiff, in oral argument and by way of brief, places great reliance on the case of **Lewis etc. v Mutual Holding Company, 20 Abs 445**, decided by Klinger and Guernsey, Judges of the Third District sitting by assignment in the 7th Appellate District. We have examined this case carefully and we find facts which distinguish that case from the instant case. In that case Klinger, PJ, found as a matter of fact that the charter of the Holding Company was obtained for the purpose of dealing in intangibles under §5414-1 GC, whereas in this case the charter though broad in its provisions, obviously was not obtained for the same purpose. Nor does it appear that the Holding Company occupied the position of a trustee of an

---

7. (2) It is the duty of a trustee appointed to liquidate assets to proceed as expeditiously as sound business judgment permits. In the absence of specific authorization to the contrary, such trustee has no right or authority to invest the proceeds of sale of such assets in the hope of realizing greater value thereby.

(4) Where a corporation is organized for the purpose of liquidating frozen assets for the benefit of former bank depositors, the directors of such corporation must personally account for their participation in any breach of the terms of the trust.

(5) The power to sell trust assets does not include or imply the power to dispose of same by exchange or barter."

express trust created by court order with restrictive powers as is the position of the mortgage loan company in this case. Furthermore, the court in that case seemed to be considering the case on questions of law and as the opinion indicates did not believe it was justified in reversing the trial court's finding. For instance at page 446 we find the following:

"As stated before, the record, as well as the finding of the court of common pleas discloses that during the tax period in question, The Mutual Holding Company was engaged in buying and selling intangibles in casual or isolated transactions, but under and in accordance with the purpose for which it was incorporated, as shown by the articles of incorporation, and since no evidence has been offered as to the number or size of transactions necessary to come within the law, we do not believe this court would be justified in reversing the trial court's finding."

It is our opinion further that the term "dealer" implies something more than the authority merely to sell or realize upon assets. It implies authority to purchase, to barter and exchange. The mortgage loan company in the instant case did not possess such authority. This was determined by the supreme court in the Shuster case.

As we interpret the Shuster case, the authority of the mortgage loan company was strictly limited with respect to the use of proceeds of sale of the trusteed assets when the court said at page 344:

"Under the terms of the plan and contract approved by the court of common pleas in cause No. 412093, the mortgage loan company had the following options with respect to the use of the proceeds of sale of the trusteed assets:

(a) to reduce the indebtedness to Central United National Bank;

(b) To deposit same in the reorganized bank; either in the commercial department or as a savings account at 2½ per cent per annum interest;

(c) To deposit same in another bank or financial institution;

(d) Subject to the payment of the Reconstruction Finance Corporation loan, to apply same in pro tanto amounts to the payment of certificates of participation by depositing the cash in an unrestricted account in the bank;

(e) To purchase certificates of participation as provided in the amended plan; and

(f) To distribute the proceeds of sale to certificate holders (subject to payment of any prior lien) the doctrine of expressio unius est exclusio alterius applies."

When the parties in this case stipulated that this court should be bound by the facts in the Shuster case it follows that this court is likewise bound by the law of that case.

Concluding our observations therefore on the first question presented, we think the findings of the supreme court which fully approved the findings of this court in its affirmance as set forth therein, established the proposition that the mortgage loan company occupied the position of a trustee of a trust for the benefit of beneficiaries named therein; that it was a liquidating trustee only with restrictive powers which could not possibly qualify as a dealer in intangibles under the statute.

Considering the second question raised by defendants herein, we think it was the duty of the plaintiff feeling aggrieved by the ruling of the tax commission to proceed to the statutory remedies provided for review of assessments. Instead of pursuing the remedies provided by statute the trustee herein commenced this suit in equity.

By availing himself of the provisions of §§5611, 5611-1 and 5711-2 GC, he could have appealed from the determination of the tax commission pertaining to tax assessments to the Board of Appeals and therefrom directly to the Supreme Court of Ohio.

It has been held that where the legislature has provided statutory remedies neither courts of equity nor law have jurisdiction of an action for injunction unless and until the parties have exhausted the remedies thus provided.[8]

The appellee relies upon a general statement of law in Ohio Jurisprudence[9] and calls particular attention to the case of **Conn v Jones, 115 Oh St 186** and **Baxter v Van Houter, 115**

---

8. *Bashore* v *Brown, Treas., 108 Oh St 18.*
*City of Cuyahoga Falls* v *Beck, 110 Oh St 82.*
*Hammond, Treas.* v *Winder, 112 Oh St 158.*
*Wagner* v *Messner, Auditor, 136 Oh St 514.*
Gorham Mfg Co. v Tax Commission of N. Y. 266 U. S. 265, 269.

---

9. "Injunction to restrain the collection of taxes may be sought under §12075 GC, where the issue involves the very power to lay the tax, as distinguished from questions as to valuation, or amount of assessment, without first proceeding under §§§5611-1, 5611-2 and 5616 GC which provide for review by the county board of revision appeal to the state tax commission, and review of its findings by the courts, as such remedies are concurrent, whereas the fundamental question is judicial."

504

**Oh St 288.** We think that the position of the appellee is untenable under the authorities cited and quoted.

The appellee concedes that it is a taxpayer claiming to be taxable only as a dealer in intangibles. It is not denying the authority or power of the state to tax in this instance. The ■ dispute, therefore, relates solely to the formula, the measure or amount of the tax. Therefore the remedy selected of applying for an injunction under §12075 GC cannot properly be considered by a court of equity in the light of the failure of the plaintiff trustee to pursue and exhaust his statutory remedies.

We think the decision of this court on the first question holding adversely of the claim of the trustee that he is a dealer in intangibles is dispositive of the issue herein. But whether or not our holding is correct in this respect it is our conclusion that the common pleas court was without jurisdiction to entertain the petition of injunction in the first instance and this court similarly is without jurisdiction so to do on appeal.

For the reasons stated a decree will be entered in favor of the defendants-appellants. Order See Journal. Exceptions noted.

MORGAN, J, and SKEEL, J, concur.