**EBSCO INDUSTRIES, INC.,**
**Plaintiff–Appellee,**

v.

**Thomas E. LILLY, Third–Party–Plaintiff, Defendant–Appellant,**

**J. Richard Egan; Richard D. Egan; and J. Edward Porter, III,**
**Defendants.**

No. 86–3595.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1987.

Decided Feb. 23, 1988.

William H. Blessing (argued), David A. Caldwell, Cincinnati, Ohio, for third-party-plaintiff, defendant-appellant.

David C. Greer, Dayton, Ohio, Clement J. DeMichelis, R. Gary Winters (argued), Cincinnati, Ohio, for plaintiff-appellee.

Before MERRITT and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

MERRITT, Circuit Judge.

This appeal raises questions under Rule 64, Fed.R.Civ.P. which provides for prejudgment attachment to preserve assets for the payment of anticipated judgments and under Rule 65, which provides for injunctive relief. Specifically the issue is whether the District Court may use its injunctive powers under Rule 65 instead of its attachment authority under Rule 64 in order to preserve assets prior to trial or judgment, and if so, under what circumstances?

Rule 64 provides that "during the course of an action, all remedies ... for ... seizure of ... property for the purpose of securing satisfaction of the judgment ultimately to be entered ... are available ... in the manner provided by the law of the state in which the district court is held...." In the instant case, the plaintiff made a strong evidentiary showing that the defendant, Lilly, had defrauded the plaintiff company of approximately $3 million in connection with the sale of Lilly's textile manufacturing company to plaintiff. Lilly, asserting his privilege under the Fifth Amendment, refused to answer questions concerning his assets and their disposition. District Judge Arthur Spiegel found a strong likelihood that Lilly was attempting to conceal and dispose of assets in order to defeat execution of the final judgment in plaintiff's favor, which the Court expected to be entered after trial.

Instead of entering an order setting in motion attachment procedures under Ohio law, as provided in Rule 64, the District Court entered an injunction under Rule 65 as follows:

It is hereby Ordered that defendant Thomas E. Lilly, his agents, employees, successors, heirs, and assigns are enjoined until further Order of this Court from transferring or encumbering any of his assets other than for basic living expenses, not to exceed $1,000 per month, without the approval of the Court or of plaintiff's counsel.

The District Court made clear, explicit and complete specific findings of fact and conclusions regarding irreparable injury,

likelihood of success on the merits and the other factors required for the issuance of a preliminary injunction under *Warner v. Central Trust Co.*, 715 F.2d 1121, 1123 (6th Cir.1983). Judge Spiegel's finding, located in a footnote of his opinion, concerning the inadequacy of the legal attachment remedies provided under Ohio law and Rule 64 was as follows:

Whenever defendant is questioned about his business activities, he invokes his Fifth Amendment right to remain silent with the result that plaintiff does not know what assets to attach under the statute; secondly, that the attachment statute requires that a bond be posted in double the amount of recovery sought.... Given that plaintiff seeks redress for ... $2.7 million as well as for a soured purchase transaction ... it would indeed be onerous to require the plaintiff to pursue such a route.

The question on appeal is whether this finding was sufficient for the exercise of the Court's equity powers.

Ohio's attachment provisions, § 2715.01–.56, permit a court to issue an attachment of defendant's property if the defendant is about to remove his property from the jurisdiction of the court, with the intent to defraud his creditors; or if he is about to convert his property into money to place it beyond the reach of creditors; or if he has property which he is concealing; or if he has disposed of his property with the intent to defraud creditors. Ohio Rev. Code Ann. § 2715.01(A)(6)–(9) (Baldwin 1984). Once the court authorizes prejudgment attachment, plaintiff must pay a bond equal to the value of the property to be attached, or, if not known, twice the value of plaintiff's claim. § 2715.044–.26. The court's order of attachment is then delivered to the levying officer who, without delay, will go to the location of the property, make an inventory and appraisal of its value, and take it into custody if personal property, or conspicuously place notice of attachment on it if real property. § 2715.05–.09.

Ohio state courts have held that the attachment provisions provide a legal, as dis-

tinguished from an equitable, prejudgment remedy. *Haines v. Public Finance Corp.*, 7 Ohio App.2d 89, 218 N.E.2d 727, 729 (1966); *Cheney v. The Maumee Cycle Co.*, 64 Ohio St. 205, 214, 60 N.E. 207 (1901). *See also* 7 J. Moore & J. Lucas, *Moore's Federal Practice* § 64.04[3], at 64–19–20 (1987); C. Wright & A. Miller, *Federal Practice and Procedure* § 2932 (1973). Before exercising their equitable injunctive powers courts in Ohio have traditionally held that the moving party must show that he has no adequate legal remedy. *Adams v. Long*, 60 N.E.2d 629, 632, 42 O.L.A. 334, 339 (Ohio Ct.App.1944); *see also Int'l Union, et al. v. Lester Engineering Co.*, 575 F.Supp. 797, 801 (N.D.Ohio 1982). Where Ohio statutes afford the party a legal remedy, a determination must be made that these statutory remedies are inadequate before a court can implement its equity powers and issue an injunction. *Blythin v. Zangerle*, 83 Ohio App. 355, 77 N.E.2d 379, 384 (1947); *Adams v. Long*, 60 N.E.2d at 632.

In addition, Ohio courts have specifically held that the legal remedy of attachment must be shown inadequate before an equitable remedy may issue. *Jebb Realty Service Co. v. McIntosh*, 26 Ohio App. 92, 93–94, 159 N.E. 143 (1926); *Card Fabrique Co. v. Stanage*, 50 Ohio St. 417, 34 N.E. 410 (1893); *Secor v. Witter*, 39 Ohio St. 218, 235 (1883); *Endel v. Leibrock*, 33 Ohio St. 254, 269 (1877). In *Jebb Realty*, the court ruled that the lower court should not have exercised its equity power to appoint a receiver "to accomplish what should have been accomplished by a writ of attachment." 26 Ohio App. at 94, 159 N.E. 143.

The Michigan Supreme Court has also ruled on this issue in the same way:

> The law processes of ... attachment would have obviated the necessity of the injunction.... Plaintiff herein had a full, complete and adequate remedy at law and there was no showing that there was some feature of the case that would bring it peculiarly within the province of a court of equity.

*Christian v. Porter*, 340 Mich. 300, 65 N.W.2d 779, 782 (1954).

Although federal courts have rarely examined when, in a given case, Rule 64 attachment should issue instead of Rule 65 injunction, in *Dorfmann v. Boozer*, 414 F.2d 1168, 1171–72, 1174 (D.C.Cir.1969), the court expressly held that where the legal remedy of attachment is adequate, an injunction should not be granted. In *Dorfmann*, the court reversed the lower court's grant of a preliminary injunction because the moving party had not shown that the attachment remedy was not adequate. The court stated:

> [A]ppellees now attempt to seize upon this action of appellants not only to get around the attachment statute, but actually to obtain relief which they could not get under that statute.

*Id.* at 1172. The court explained:

> The great equitable power to enjoin a party *pendente lite* should not be exercised unless it is manifest that the normal legal avenues are inadequate, that there is a compelling need to give the plaintiff the relief he seeks, and that the injunction will not wreak greater harm on the party enjoined.

*Id.* at 1174; *see also Mitchell v. Lay*, 48 F.2d 79, 83 (9th Cir.1931); *Taunton Municipal Lighting Plant v. Dept. of Energy*, 472 F.Supp. 1231, 1233 (D.Mass.1979); *Berman v. Narragansett Racing Ass'n*, 48 F.R.D. 333, 336 (D.R.I.1969).

No Sixth Circuit case has explicitly held that before a court issues a preliminary injunction it must find in addition to the other criteria for an injunction, that the legal remedy of attachment is inadequate to redress the moving party's concerns. However, the Sixth Circuit has held generally that an injunction may not issue if there is an adequate remedy at law. *Gilley v. United States*, 649 F.2d 449, 454 (6th Cir.1981); *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18*, 471 F.2d 872, 876 (6th Cir.1972); *Travis v. Pennyrile Rural Electric Co-op.*, 399 F.2d 726, 729 (6th Cir.1968); *see also Beacon Theatres v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1958). In addition, the Sixth Circuit recently held in *USACO Coal Co. v. Carbo-*

*min Energy,* 689 F.2d 94, 99 (6th Cir.1982), that a state's attachment statute could not provide adequate protection to plaintiff and therefore upheld the district court's injunction.

Our view that a preliminary injunction may not be granted unless there are valid findings that the legal remedy provided by the state's attachment statutes under Rule 64 is inadequate, is based on long-standing theories of equity jurisdiction. In his treatise *Equity Jurisprudence,* Pomeroy advises us:

> [I]t is solely because these legal remedies are, under the assumed circumstances, inadequate to do complete justice, ... that the courts of equity also have the power to interfere and to award ... remedies....

J. Pomeroy, I *Equity Jurisprudence* 216–17 (1881).

Although the District Court in this case made substantial and complete findings and conclusions on other factors supporting the issuance of a preliminary injunction, it would have been well for it to make more complete findings on the inadequacy of the attachment remedy. The Court found that the defendant had taken specific steps to conceal assets and had refused to disclose what assets he has or where they are located, making attachment difficult if not impossible. It also found that making a surety bond for twice the amount of the claim would be extremely costly and unnecessary under the circumstances. In addition, Ohio's attachment statutes do not provide an adequate remedy because: (1) They do not apply to assets located outside of Ohio; thus EBSCO must initiate attachment proceedings in each state where defendant owns property. (2) If plaintiff can find that defendant owns securities which it is concealing, EBSCO must garnish or enjoin securities brokers or whoever possesses the securities so that Ohio levying officers can obtain possession of stock certificates. (3) Delay resulting from the attachment process will provide additional time for defendant to dissipate assets. (4) The bond premium in a case such as this one involving claims for some $3 million in assets taken by fraud would be enormous. These factors, along with the reasons stated by the District Court, plus its clear findings of fraud, are sufficient to satisfy the requirement that the attachment remedy be shown to be inadequate. We therefore affirm the judgment of the District Court.

RYAN, Circuit Judge, dissenting.

In my judgment, the district court was without authority to issue the preliminary injunction the court approves today. The authorities in support of that view are marshalled in a clear, coherent, and persuasive fashion in my brother's opinion for the court. Unfortunately, the dispositive final paragraph for affirmance is antithetical to the discussion that proceeds it and, in my view, offers no basis in law to justify the court's conclusion.

The issue, as correctly stated in the majority opinion, is "whether the district court may employ its injunctive powers under Fed.R.Civ.P. 65 instead of its attachment authority under Rule 64 in order to preserve assets prior to trial or judgment, and, if so, under what circumstances." The answer is no, not as it was done in this case. Most of the reasons are clearly spelled out in my brother's opinion.

## I.

It is uncontroverted that the district court issued its injunction in this case solely to secure a fund from which the plaintiff will be able to satisfy a money judgment if one is entered in its favor following trial. Stated otherwise, the purpose of the injunction is to assure that, come judgment day, the defendant will be collectible.

As my brother correctly observes (it is difficult to avoid reference to the majority opinion since, save for the final paragraph, it states much of the case for this dissent concisely, eloquently, and correctly), Rule 64 provides that state law determines the remedies available in a federal court for the seizure of property to secure a fund from which to satisfy an anticipated money judgment. In this case, that law is Ohio Rev.Code Ann. § 2715.01–.56 which pro-

vides for prejudgment attachment. In addition, it is settled in Ohio, as my brother points out, that the attachment remedy may not be bypassed and resort had to equitable relief merely to secure a fund for the purpose of satisfying an anticipated judgment, unless the moving party demonstrates that the attachment statute is not an adequate remedy. *See Blythin v. Zangerle,* 83 Ohio App. 355, 77 N.E.2d 379, 384 (1947); *Adams v. Long,* 60 N.E.2d 629, 632, 42 O.L.A. 334 (Ohio App.1944); *Jebb Realty Service Co. v. McIntosh,* 26 Ohio App. 92, 93–94, 159 N.E. 143 (1926).

Here, EBSCO has an adequate legal remedy under Ohio's attachment statute. But the district court determined that the attachment remedy was "inadequate" for two reasons: (1) the plaintiff, when asked by defendants' attorneys about his personal assets, invoked the fifth amendment privilege against self-incrimination; and (2) the attachment statute requires that the party seeking attachment post a bond in an amount equal to the value of the asset to be attached or double the amount of the judgment sought, and that such a bond, in this case, is "onerous." For those reasons, the district court declared the attachment statute to be an inadequate remedy at law and proceeded to enter the sweeping injunction under review.

The Ohio legislature, in enacting the attachment statute, fixed the formula for determining the amount of bonds to be posted under the statute. It is not for the district court or this court to effectively overrule or disregard that determination by concluding that when the amount of the bond is very substantial because the amount of the judgment sought is substantial, the attachment statute is therefore an inadequate legal remedy. The defendant, the district court, and this court, have cited no authority to support the novel notion that Ohio plaintiffs have no adequate legal remedy in attachment for cases in which the amount the plaintiffs seek is in the millions, thus requiring a security bond in the multimillions.

Moreover, the district court's findings of fact are wholly inadequate to support its conclusion that the plaintiff does not have an adequate remedy under the Ohio attachment statute. Although the court observed that, in its judgment, the Ohio attachment statute would not provide the plaintiff "with adequate protection against the probability of continued disreputable conduct that would result in the dissipation and concealment of assets ...," it did not explain why it reached that conclusion. The defendant's refusal to tell the plaintiff where the defendant's assets are located, and the fact that the plaintiff seeks a judgment in an amount which, if it wishes to seize defendant's assets even before it proves its entitlement to judgment, requires, under the statute, a very substantial bond, do not, alone or in combination, demonstrate the inadequacy of Ohio's attachment statute; they demonstrate at best that the plaintiff has failed thus far to locate any attachable assets, and that the legislative judgment as to the amount of the required prejudgment attachment bond is more than the plaintiff would like to post.

## II.

But even if the court were correct in its conclusion that the Ohio attachment statute is an inadequate legal remedy in order to secure a fund of property for post-judgment levy, the injunction issued by the court is entirely beyond the court's lawful power.

A federal court may not issue a temporary injunction restraining a defendant in a suit for money damages from disposing of substantially all of his, her, or its assets, identified and unidentified, in hand and after acquired, solely to assure the existence of a fund from which the plaintiff, if successful, may later satisfy favorable money judgment. *DeBeers Consol. Mines v. United States,* 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945); *Wahlgren v. Bausch & Lomb Optical Co.,* 77 F.2d 121 (7th Cir.1935); *Martin v. James B. Berry Sons Co., Inc.,* 83 F.2d 857 (1st Cir.1936).

The *DeBeers* Court explained why:

Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defend-

ant can easily make away with or transport his money or goods, impose an injunction on him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestering his opponent's assets pending recovery and satisfactory of a judgment in such law action. No relief of this character has been thought justified in the long history of equity jurisprudence.

325 U.S. at 222–23, 65 S.Ct. at 1135.

What a federal court *may* do, in an appropriate case to assure that misappropriated funds will not be dissipated pending trial and judgment, is impose a constructive trust upon the misappropriated property in the hands of the wrongdoer or upon property into which the misappropriated funds can be directly traced. *United States v. Brimberry*, 779 F.2d 1339 (8th Cir.1985). That is especially true when it is alleged, as it is here, that the defendant wrongdoer has acquired funds belonging to the plaintiff, in violation of a fiduciary duty owed the plaintiff. *See McCandless v. Furlaud*, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121 (1935); *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94 (6th Cir.1982). It is well-settled, however, that such a constructive trust, must be imposed upon the specific ascertainable assets—the *res*—missappropriated from the plaintiff and now in the defendant's hands or upon property into which the misappropriated funds have been converted. *See* Dobbs, *Remedies*, § 4.3, pp. 240–43 (West 1980):

> This device [constructive trust] is used only when property in some form can be identified as belonging in good conscience to the plaintiff.[12] If defendant obtains Blackacre from the plaintiff by fraud, sells it and dissipates the money, this gives the plaintiff no claim to other property owned by the defendant, and it may not be said that the defendant is a constructive trustee of such other property.[13] In such a case, he is liable for damages.... [T]he constructive trust

can be imposed only when there is some specific property identified as belonging, in equity and conscience, to the plaintiff.

---

[12] Occasionally courts speak of a constructive trust even though there is no *res* or property to which a trust might attach. This makes sense only on the assumption that the court is referring to the substantive principle against unjust enrichment, as grounds for granting an ordinary judgment.

(Footnote 13 omitted.)

But that is not this case at all. Plaintiff has made no attempt whatever to trace the funds said to have been misappropriated from it into a specific *res* which might be the object of a constructive trust. Indeed, the testimony introduced at the hearing before the district court on the plaintiff's petition for an injunction is that there is no evidence that the defendant actually received any of the misappropriated funds for which the plaintiff seeks recovery, but instead fraudulently diverted them to the First National Bank in payment of the three million dollar promissory note made by Four Seasons and guaranteed by the defendant.

The learned district judge appears to have acknowledged, albeit somewhat obliquely, that the court's power to issue an injunction solely to secure a corpus from which the plaintiff might later satisfy a money judgment is limited to an injunction which imposes a constructive trust upon a specific *res*. The court stated in its Findings of Fact and Conclusions of Law:

> Because the nature of this case involves fraud and embezzlement, as has been conceded for the purposes of this lawsuit, the freezing of defendant Lilly's assets is in effect the freezing of plaintiff's assets. The result is a situation *akin* to a constructive trust such that no substantial harm will visit defendant or his business enterprises. (Emphasis added.)

The difficulty with that observation, of course, is that there is no evidence in the record that the "freezing of defendant Lilly's assets is in effect the freezing of plaintiff's assets" because, as has been observed, the bulk of the evidence is that the

misappropriated funds are not in Lilly's hands, and never were, but have been diverted to First National Bank in payment of the aforementioned promissory note. In all events, "freezing the defendant Lilly's assets" by enjoining him from transferring or encumbering any of his assets presently in hand, and from spending any after acquired income, in excess of $1,000 a month for living expenses, is not the imposition of a constructive trust upon a specific identifiable *res* once in the hands of the plaintiff and now traceable to the defendant, and it is not "akin" to it. Indeed, the sweeping injunction in this case was entered specifically because, as the district court put it, "the plaintiff does not know what assets to attach...." Both the district court and this court rely upon *USACO Coal Co.*, 689 F.2d 94, to justify the injunction that has been issued. A careful reading of *USACO Coal Co.* reveals why it is no authority for what has been done here. In that case, one Schierack was alleged to have breached his fiduciary duty as a promoter of a newly organized plaintiff corporation by diverting funds raised for the corporate promotion to himself and to several other corporations controlled by him. The plaintiffs brought a civil RICO action against the individual promoter and the several corporations controlled by him into which the plaintiffs' funds had been diverted. This court approved the issuance of an injunction, freezing in place the assets, *not* of the individual wrongdoers, but of the specifically identified defendant corporations into which the promoter had diverted the plaintiffs' fund. This court troubled to observe that it was not approving an injunction issued for the purpose of creating a collectible defendant, as in this case, but was approving the imposition of a constructive trust upon specific, identifiable assets in the possession of identified corporate defendants:

> It is entirely clear that the district court issued the injunction freezing defendants' assets in order to protect the rights of the plaintiff corporations and their shareholders to restitution of funds obtained by [the individual promoter] in breach of his promoter's fiduciary duty. The injunction was not issued in order to

secure a RICO treble damages award that might ultimately result from count one of the complaint, but rather was issued to protect rights to reach the defendants' property as a result of the allegation of breach of fiduciary duty contained in count two of the complaint.... The injunction here preserves assets for which the defendants may be accountable under a constructive trust.

*USACO Coal Co.*, 689 F.2d at 97. Here, indisputably, the injunction was issued solely for the purpose of "secur[ing] a ... damages award."

If EBSCO wished to attach or sequester defendant's assets, it was obligated, under Rule 64, to comply with the Ohio statutory requirements for posting a bond. If it wished instead, to impose a constructive trust, it was obligated to identify and "freeze" an ascertainable *res* that is traceable back to the plaintiff. The district court required neither in this case, with the result that the injunction issued is beyond its lawful authority.

I would reverse and remand for specific findings concerning the *res* of the constructive trust or, in the alternative, for an order that plaintiff deposit a bond or cash deposit meeting the requirements of Ohio Rev. Code Ann. § 2715.01.