**VALOIS, Inc. v. THORNE.**

No. 1163.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 7, 1951.

Decided Feb. 8, 1952.

Stanley H. Kamerow, Washington, D. C., with whom Allan L. Kamerow, Washington, D. C., was on the brief, for appellant.

Joseph H. Schneider, Washington, D. C., with whom Ben Lindas, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Involved on this appeal is the question of the right of a co-operatively owned corporation to maintain a landlord-tenant suit against one of its member-tenants who was in default of monthly rent payments due under a proprietary lease covering an apartment occupied by her.

The cooperative, Valois, Inc., after having first served a thirty day notice to quit on the lessee, Ruth Thorne, brought suit against her in the landlord and tenant branch of the Municipal Court for possession of the apartment, alleging that she was in default in the payment of rent to the extent of $181.92 for the period from January 1, 1951 to March 31, 1951. Defendant resisted the claim on several grounds. But in view of the record as it comes to us, the only defenses particularly relevant to this appeal were these: that she was not a tenant of the corporation but of one Westenberger, an alleged majority stockholder; that "according to the documents signed by the defendant herein, she became, if anything, a vendee of a share of stock entitling her to possession of the premises in question;" and that the plaintiff was not a valid corporation and hence had no right to maintain the action. Defendant also asserted a counterclaim based on rent overcharges and malicious abuse of process; but since this was not ruled upon below and since no appeal was noted by defendant, such counterclaim is not involved on this appeal. No evidence was offered by defendant and the only ruling made by the trial court came at the end of plaintiff's case and was that "the plaintiff had not established a landlord and tenant relationship." The case is here on plaintiff's appeal.

Plaintiff proved that by unanimous approval of its board of directors the corporate officers were authorized to terminate the lease of defendant, Ruth Thorne, because of her default in payments under her lease. The lease recited that as owner of one share of capital stock, defendant lessee became entitled to occupy an apartment in the building for a period of 99 years at a rental to be determined under ratios and terms defined elsewhere in the lease. The lease also gave the lessor the right of repossession upon lessee's default.

We think plaintiff's evidence made out a prima facie case. The law generally applicable to this situation has recently been spelled out by us in 1915 16th Street Co-operative Association v. Pinkett, D.C. Mun.App., 85 A.2d 58, 79. There the lessee entered into a contract with the coopera-

tive association to purchase a cooperative apartment under a contract which provided for monthly payments. He also entered into a proprietary lease under which he had the right to own and use the apartment so long as he made the payments agreed upon. We held that upon his default in payment of monthly installments the cooperative association had the right to terminate the lease. We refer to the opinion in that case and also to what we wrote in connection with a motion for rehearing, for a summary of the law which we think governs this case.

 The basic questions are the same in the two cases. There are some points of difference, in the facts and the leases in the two cases are not identical. But the basic issue remains the same: whether one holding cooperative membership in an association or corporation and being in possession of an apartment under a lease deriving from such membership is subject to a suit for possession when he defaults under the lease? We answer that question now as we did in the Pinkett case. We think such a lessee is in no different position than any other lessee who is in default and that the Municipal Court clearly has jurisdiction to entertain a suit based on such default.

 As to the lessee's equity of redemption, we also refer to the Pinkett opinion and say again that there is no barrier to this or any other cooperative lessee asserting his equitable or other defenses by way of counterclaim or otherwise in the Municipal Court or in the District Court of the United States, depending upon the jurisdictional amount involved in such claim.

We need not discuss the merits of other special defenses asserted by the lessee, since these were not reached in the trial court, and are not involved here. Defendant will have a full opportunity to present all her defenses on the retrial of the case.

 It has been said that the rights and obligations between the parties to such a transaction should not be determined in "a summary landlord and tenant proceeding." We suggest that though there may at one time have been some basis for such a statement, that is not true today. More than forty years ago landlord and tenant proceedings were had before justices of the peace. In 1909 that position was abolished and the Municipal Court was created by Congress, 35 Stat.L. pt. 1, p. 623. In 1921 its jurisdiction was increased to $1000, and it was then made a court of record and a system of jury trials was provided. Code 1940, § 11–701 et seq. Thus there was no longer any traditional or historical reason for withholding from the jurisdiction of that court disputes of a so-called "major" nature which fell within its statutory jurisdiction. The background and development of this situation were carefully traced and explained in Schwartz v. Murphy, 1940, 72 App.D.C. 103, 112 F.2d 24. There the court overruled a long standing decision which had applied a too rigid rule excluding from the jurisdiction of the Municipal Court all disputes respecting title to realty. Two years later the Municipal Court was completely re-organized by Congress, Code 1940, Supp. VII, § 11–751 et seq., and its jurisdiction still further enlarged. It was not only entrusted with criminal jurisdiction but its civil jurisdiction was increased to $3000. This manifested a Congressional intent to channel into the new court more litigation of a purely local character which theretofore had found its way into the United States District Court. Not long afterwards it was made clear beyond question that the new statute gave the new court equitable jurisdiction as well. Klepinger v. Rhodes, 1944, 78 U.S.App.D.C. 340, 140 F.2d 697, certiorari denied 322 U.S. 734. See also Paley v. Solomon, D.C.D.C., 59 F.Supp. 887; Ridgley v. United States, D.C.Mun. App., 45 A.2d 475; Psarakis v. Dukane, D. C.Mun.App., 84 A.2d 543.

In view of the jurisdictional development and growth of the Municipal Court we are persuaded that whatever traditional reason may have existed in the past for feeling that a proceeding of this nature ought to be litigated in the United States District Court, no such reason exists today.

Reversed, with instructions to award a new trial.

HOOD, Associate Judge (dissenting).

On rehearing in 1915 16th Street Co-operative Association v. Pinkett, D.C.Mun. App., 85 A.2d 58, I dissented. The question here is essentially the same as in the Pinkett case and I dissent on the same grounds.