RUDDER et al.  v.  UNITED STATES.

No. 1429.

Municipal Court of Appeals.

District of Columbia.

Argued April 26, 1954.

Decided June 9, 1954.

Rehearing Denied July 2, 1954.

David Rein, Washington, D. C., for appellants.

Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., with whom Leo A. Rover, U. S. Atty., Lewis A. Carroll, and Joseph A. Rafferty, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

The United States Government sued in the Landlord and Tenant Branch of the Municipal Court to recover possession of an apartment in Lincoln Heights Dwellings, a low-rent housing project constructed under the United States Housing Act of

1937.[1] The property is owned by the United States and managed by the National Capital Housing Authority. Appellants, Mr. and Mrs. Rudder, obtained possession of the apartment under a written month-to-month agreement in June 1952. In July 1952 Congress passed the Gwinn Amendment, providing that "no housing unit constructed under the United States Housing Act of 1937, as amended, shall be occupied by a person who is a member of an organization designated as subversive by the Attorney General".[2] Seeking to effectuate the Congressional intent, the Housing Authority sent to all of its tenants for signature a Certificate of Non-Membership in Subversive Organizations, accompanied by a copy of the Attorney General's list. The Rudders received the certificate but did not sign it, and then the United States, through the Housing Authority, caused to be served upon them a notice to quit. This notice contained the following statement: "You are no longer eligible for occupancy because of your refusal or failure to execute the required Certificate of Non-Membership in Subversive Organization." After expiration of the notice period the United States brought this action for possession. The complaint for possession recited no reason except that defendants were wrongfully holding over after the expiration of the notice.

In the trial court the Rudders contended that the Gwinn Amendment is unconstitutional and that the United States could not evict them upon the authority of an invalid act. They offered as evidence the form on which they had been asked to certify their non-membership in subversive organizations, together with the Attorney General's list of such organizations. These the trial judge rejected as immaterial, and refused to consider. He also refused to consider the constitutionality of the Gwinn Amendment and the Government's reason for giving the notice to quit. He held that the "gravamen of the possessory action is the

1. 50 Stat. 888, as amended, 42 U.S.C.A. § 1401 et seq. (1952).

2. Act of July 5, 1952, c. 578, Title I, § 101, 66 Stat. 403 re-enacted July 31 1953, c. 302, Title I, § 101, 67 Stat. 307, 42 U.S. C.A. § 1411c. (1952).

wrongful holding over by the tenants after the expiration of the notice to quit," that the reason for issuing the notice was not material, and that plaintiff was entitled to possession.

From that ruling the Rudders appeal. They argue that the United States, unlike a private landlord, cannot evict a tenant by serving a thirty days' notice to quit if the notice is based on an unconstitutional ground, and contend that the Gwinn Amendment is unconstitutional.

The Government contends that the rights of both parties under the lease are not affected by the fact that the United States is the landlord, that it must be treated as any other landlord, and that the reason for issuing the notice to quit should not be considered.

There is no dispute as to the type of tenancy here involved and its general characteristics. Both parties agree that it is one from month to month. Such a tenancy is a " 'periodic tenancy' as opposed to a tenancy for a certain period on the one hand and a tenancy at will on the other. It is a tenancy for a month certain plus an expectancy or possibility of continuation for one or more similar periods." [3] In this jurisdiction such a tenancy "may be terminated by a thirty days' notice in writing from the landlord to the tenant to quit * * *." Code 1951, 45–902. This court has held that no reason need be given in the notice to quit.[4] Code 1951, 45–910, provides that a landlord may bring an action in the Municipal Court to recover possession whenever "any tenancy shall be terminated by notice as aforesaid, and the tenant shall fail or refuse to surrender possession of the leased premises * * *." And Code 1951, 11–735, as amended by Act of June 18, 1953, c. 130, 67 Stat. 66, provides: "Whenever any person shall detain possession of real property without right, or after his right to possession shall have ceased, it shall be lawful for the municipal court * * * to issue a summons to the party complained of to appear and show cause why judgment should not be given against him for the restitution of possession."

It may be conceded that the remedy above described has traditionally been considered summary in character. The issue to be tried in such cases is the right of possession.[5] Nor is there any dispute as to the right of the United States to invoke this remedy; such right is well established,[6] and the lease here involved specifically provides that such summary action may be brought.

Thus we come to the question at issue: whether the United States Government, unlike a private landlord, may be required to reveal its reason for seeking to terminate the tenancy; or to state the question more specifically, whether the tenant may defend on the ground that the Government's reason was an improper or unlawful one. Ordinarily we think these questions would have to be answered adversely to the tenant. Ordinarily it would be correct to say that the Government, like any private landlord, may exercise its right to terminate a monthly tenancy by serving a statutory notice to quit, and without revealing any other reason. See Brand v. Chicago Housing Authority, 7 Cir., 120 F.2d

---

3. Zoby v. Kosmadakes, D.C.Mun.App., 61 A.2d 618, 620; Dorado v. Loew's, Inc., D.C.Mun.App., 88 A.2d 188.

4. Westchester Apartments v. Keroes, D.C. Mun.App., 32 A.2d 869; Warthen v. Lamas, D.C.Mun.App., 43 A.2d 759. We have also said, concerning such notice: "Its purpose is to convey the information that the landlord * * * desires to terminate the tenancy. Though it is a condition precedent to the filing of suit, it is not so in a jurisdictional sense." Craig v. Heil, D.C.Mun.App., 47 A.2d 871,

872; Lynch v. Bernstein, D.C.Mun.App., 48 A.2d 467.

5. Thornhill v. Atlantic Life Ins. Co., 63 App.D.C. 184, 70 F.2d 846; Service Parking Corp. v. Trans-Lux Radio City Corp., D.C.Mun.App., 47 A.2d 400; Shipley v. Major, D.C.Mun.App., 44 A.2d 540.

6. See United States v. Wittek, 337 U.S. 346, 69 S.Ct. 1108, 93 L.Ed. 1406; Miller v. United States, D.C.Mun.App., 77 A.2d 171; Aston v. United States, D.C.Mun. App., 75 A.2d 784.

786; Columbus Metropolitan Housing Authority v. Simpson, 85 Ohio App. 73, 85 N.E.2d 560.[7]

■ But we think it clear that in this case the Government has by its own lease agreement removed itself from that status. In addition to the usual and customary provisions of a month-to-month lease, and though obviously not required to do so, the Housing Authority included in the lease a provision that it might terminate the lease for any one of eight listed reasons, or for others not named. Among them was this reason: "(4) The tenant is no longer eligible for occupancy under any applicable law or regulation." This clearly indicated the contractual intent that these tenants were not to be evicted except for certain reasons. That this was recognized by the Government when it prepared the notice to quit, is clear from the language of the notice reading, "The reason is as follows: *You are no longer eligible for occupancy* because of your refusal or failure to execute the required Certificate of Non-Membership in Subversive Organization." (Emphasis supplied.)

■ Unmistakably the Government was relying on the special lease provision in taking the position that the eligibility of these tenants was at an end. Therefore, when the tenants in resisting the suit for possession challenged that position, they should have been permitted to show, if they could, that they were still eligible. And we think it was wrong to say that such defense was immaterial. The position of the Government necessarily was that the tenants were "no longer eligible for occupancy under any applicable law [the Gwinn Amendment] or regulation." The tenants were entitled to the opportunity to establish that the Gwinn Amendment was unconstitutional and that the Government was predicating its suit upon an invalid and unlawful basis. The burden of establishing

such defense would, of course, be on the tenants.

■ Our holding is that the trial court should have entertained the defense. But such holding does not lead to a reversal, because we think that as a matter of judicial policy the trial court would have been required to rule in favor of the constitutionality of the Gwinn Amendment. See United States v. Lewis, D.C.Mun.App., 100 A.2d 40, 41, where we repeated the well established rule that courts of first instance should resolve every intendment in favor of an act of Congress and refrain from nullification thereof unless some plain mandate of the constitution is shown to have been violated; and where we also said that courts of limited jurisdiction "should not challenge the right of Congress to make a law unless unconstitutionality is glaring and it is manifest that Congress has exceeded its grant of power."

■ In our opinion the Gwinn Amendment was an entirely reasonable exercise of the Congressional power. It reflects the wholly salutary view that since low-rent housing projects are subsidized by taxpayers' money, the special benefits thereof shall be available only to loyal tenants, and not to those who elect to join and support organizations whose purposes are inimical to the public welfare. This same view is expressed in the only appellate decision which has been called to our attention, or which we have been able to find. Peters v. New York City Housing Authority, 283 App.Div. 801, 128 N.Y.S.2d 712.

■ We think the requirement that tenants sign a Certificate of Non-Membership was a reasonable means of effectuating the purposes of the Act, and that failure to sign such certificate furnished a valid basis for eviction.

Affirmed.

---

7. See also Jarrett v. Norfolk Redevelopment & Housing Authority, 4 Cir., 169 F.2d 409; Wolfe v. United States Housing Authority, D.C.W.D.N.Y., 36 F.Supp. 580; Walton v. City of Phoenix, 69 Ariz. 26, 208 P.2d 309; San Diego State College Foundation v. Hasty, 90 Cal.App.2d Supp. 884, 202 P.2d 868; Municipal Housing Authority v. Walck, 277 App. Div. 791, 97 N.Y.S.2d 488; Application of United States Housing Corp., 196 App. Div. 819, 188 N.Y.S. 365.