Richard **DORFMANN** et al., T/A Tenth Street Limited Partnership, Appellees,

v.

Russell B. **BOOZER** et al., Appellants.

No. 22750.

United States Court of Appeals District of Columbia Circuit.

Argued May 21, 1969.

Decided June 16, 1969.

Mrs. Florence Wagman Roisman, Washington, D. C., argued the motion for appellants.

Mr. John L. Laskey, Washington, D. C., with whom Mr. Thomas P. Jackson, Washington, D. C., was on the motion, for appellees.

Before WRIGHT, McGOWAN and ROBINSON, Circuit Judges.

PER CURIAM:

Appellants have brought this motion for summary reversal of a preliminary injunction entered against them by the District Court on February 13, 1969. For the reasons stated below, we grant the motion.

I

Appellants are three tenants in the Trenton Terrace apartment complex in the District of Columbia. Two of them are officers of the Trenton Terrace Tenants Council, an organization formed by tenants to protect their rights and negotiate with the apartment landlords about matters affecting tenants.

Alleging numerous housing code violations, the Tenants Council members have been withholding rent since May 1968.[1] At the time of the preliminary injunction, many tenants were paying amounts equivalent to their rent to the Anacostia Southeast Federal Credit Union; the uncontradicted evidence of appellants is that the money deposited in the Credit Union can only be withdrawn by the depositor upon his signature and the signatures of two of the three officers of the Tenants Council.[2] At present, there is approximately $40,000 deposited in the Credit Union. It is appellants' position that they have no legal obligation to pay rent while violations of the housing regulations exist on their premises.[3]

Appellees, doing business as the Tenth Street Limited Partnership, are the owners of the Trenton Terrace apartments. The premises are secured by a deed of trust to Perpetual Building Association, with a present balance in excess of $1,000,000. Appellees have, since their purchase of the property in 1966, run into financial difficulties concerning the upkeep of the apartments; in June 1968 and again in November 1968, Perpetual Building Association increased its original loan, by a total of some $190,000, so that appellees could keep up the apart-

1. As a result of complaints to the Department of Licenses and Inspections, inspectors examined the apartments and cited numerous violations of the housing regulations. The District Court found that most of those defects have been repaired.

2. No tenant can withdraw a sum larger than the amount which he has deposited. This arrangement was instituted in December 1968. Prior to that time, money of a tenant could be disbursed only upon a vote of the Tenants Council, with the consent of that tenant and the written signature of the attorney for the Tenants Council. Both arrangements preserve control over the money—at least to the extent of a veto over its use—in the person of the depositor.

3. The Tenants Council has also sought to negotiate other matters with the apartment owners; these include providing recreation areas and laundry facilities, and insuring greater protection against vandalism.

ments.[4] However, appellees continued to have financial problems, and at the time of the preliminary injunction they operated with an average monthly deficit (including cost of repairs and debt service) of some $23,000. Appellees were in default on their trust payments, but no action had been taken to foreclose on the property.

On January 31, 1969, appellees brought the instant suit against appellants. Alleging that appellants owed them rent, appellees filed the suit in equity in the District Court, seeking an accounting of the funds paid in to the Credit Union by all the members of the Tenants Council (not just those of the individual appellants), and preliminary and permanent injunctions against appellants, enjoining them and all members of the Tenants Council from paying any more money into the Credit Union and ordering the funds in the Credit Union to be paid over to the court for disbursement to appellees for operating the apartments.[5] The litigation is progressing in due course in the District Court.[6]

## II

The action for preliminary injunction came on for hearing on February 10, 1969. The gist of appellees' argument was that because of the rent strike appellees were without funds to operate the apartments, and would suffer irreparable harm if the trust holder, as they claimed was likely, foreclosed.

After hearing, and on consideration of the pleadings, testimony and affidavits, the District Judge granted the preliminary injunction. He found that appellees were "without operating funds, and without any source of income other than [their] rental income," and that if they were unable to obtain operating funds "immediately" they would have to cease their operations and would suffer a foreclosure. He concluded that appellees would thus suffer irreparable injury if they did not get operating funds at once, and that therefore the remedy of a suit at law was inadequate.

The injunction was entered on February 13, 1969; it ordered the Credit Union to deposit the funds into the court; it further enjoined appellants and all those in active concert with them

---

4. Most of the money was expended in making repairs to remedy housing code violations, *see* Note 1, *supra*, and generally upgrading the quality of the premises.

5. As an alternative to having the funds turned over to the court for disbursement to appellees, appellees asked that a trust be impressed upon the Credit Union funds for the purpose of accounting and distributing the money to appellees.

6. An answer to the complaint has been filed, raising a number of general defenses and also affirmative defenses of: "estoppel, failure of consideration and illegality, based on plaintiffs' violations of the Housing Regulations and other housing laws of the District of Columbia, specifically including the General License Law."

Appellants have also filed a counterclaim for damages allegedly arising from the violations of the housing regulations. Interrogatories have been filed and the case has been consolidated before one judge.

In addition, two motions to dismiss were filed. The first concerned the initial naming as a defendant of the attorney for the Tenants Council; the plea as to her was that she be enjoined from giving advice to the Tenants Council to continue with the rent strike. She filed a motion to dismiss, arguing that the complaint sought to interfere with her, and her clients', right to a lawyer-client relationship. The motion was granted, without opinion. The second motion to dismiss was on behalf of the other defendants (appellants here). That motion was predicated, in part, on the argument that the instant suit should not be allowed to proceed as an action in equity (accounting against the Credit Union funds and injunction) because there is an adequate remedy at law, *viz.*, a suit for breach of contract and damages. That motion was denied, also without opinion.

In addition to this suit, appellees have filed eviction suits in the District of Columbia Court of General Sessions against nine of the tenants; the suits are pending in various stages of litigation and appeal.

to cease making rental payments to anyone but appellees or the court. The injunction also contained the following clause:

"All sums received by the Clerk of this Court pursuant to the terms of this Order are to be subject to further disposition by this Court on application of any party, said application to be served on counsel at least three (3) days before presentment to the Court * * *."

Appellants immediately appealed and this court granted a stay until further order. The record has been certified here, and argument heard upon appellants' motion for summary reversal.

### III

Appellants make three arguments in support of their contention that the preliminary injunction should not have been granted: (1) The injunction is invalid because it runs against all the members of the Tenants Council and their assets, and against the Credit Union, without any finding by the court that the Tenants Council is a class within the Federal Rules, that appellants represent that class, and that the Credit Union is an agent of appellants. (2) In any event, it is erroneous in a case of this type to issue injunctive relief because there are other adequate remedies and, further, it is erroneous for the court to do more than bring the fund into the court (*i. e.*, the fund cannot be disbursed to appellees). And (3) even if injunctive relief might be proper in a case of this type, on the facts of this case it was inappropriate for the court to have issued this injunction.

■ Appellees contest the latter two points; they implicitly concede the validity of the first argument by suggesting that this court remand the case for findings whether appellants represent a class, and whether the Credit Union is an agent of appellants for the purposes of this suit.[7] Since we hold that the preliminary injunction should not have been issued at all, there is no need for a remand on this point.[8] We find that there is a comprehensive statutory scheme for landlord and tenant actions, including detailed provision for attachment prior to judgment in narrowly and precisely defined instances, and we see no circumstances in this case justifying departure from these provisions.

The goal of appellees' suit is, of course, to obtain rent claimed to be owed them under a lease contract. An examination of the District of Columbia Code shows that a landlord has available a full panoply of legal remedies in such circumstances. In addition to a normal action for breach of contract, 45 D.C.CODE § 910 (1967) provides that a landlord can

7. There is no merit in appellees' contention that the appeal should be dismissed because no monies have as yet actually been disbursed to appellees. Appellees moved for and obtained a preliminary injunction, and the action of the court in granting a preliminary injunction is explicitly appealable under 28 U.S.C. § 1292(a) (1) (1964).

8. Appellees' complaint proceeded on the theory that appellants were a class, and the relief granted could only be valid if appellants are in fact a class (otherwise the court would have no jurisdiction over money belonging to tenants not named as defendants in the suit). The District Court, however, made no finding that appellants did represent a class, despite the requirement in Rule 23(c), Fed.R. Civ.P., that: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."

It was certainly "practicable" to make a finding on the class question prior to issuance of the injunction; any emergency was taken care of when the court issued, *ex parte*, a temporary restraining order against appellants on the day the complaint was filed. The preliminary injunction, especially one which worked a transfer of money belonging to persons who were not within the jurisdiction of the court, should not have been issued before the action was certified as a class action. *Cf.* Rule 23(e), Fed.R.Civ.P., which requires court approval of a settlement in a class action; such approval can only come after the court finds that the action is a valid class action. Berger v. Purolator Products, Inc., S.D.N.Y., 41 F.R.D. 542 (1966).

bring an action for ejectment in the United States District ·Court or an action to recover possession in the District of Columbia Court of General Sessions. The latter action can be conducted as a summary proceeding,[9] and claims for damages can be joined. 45 D.C.Code § 911 (1967). Further, the landlord is given a lien on the tenant's chattels, 45 D.C.Code § 915 (1967), and that lien can be enforced by attaching the chattels before suit, on an affidavit that the rent is due and unpaid, 45 D.C. Code § 916 (1967).[10]

As a counterweight to these varied powers, there is a general statutory provision limiting attachment or garnishment prior to judgment. 45 D.C.Code § 501 *et seq.* (1967) explicitly and comprehensively set out the requirements for such attachment; those sections provide, with exceptions not here material, that attachment can only be had when there is a showing that the defendant has or is about to evade service of process or is about to transfer fraudulently the money or property. Further, before a person can attach someone's property or money he must put up a bond in twice the amount of his claim. 16 D.C.Code § 501(e) (1967). Finally, the funds and property attached are to be preserved by the court during the pendency of the action. *Id.*, § 518.

It is thus apparent there is a variety of remedies at law open to a landlord. Even in such actions Congress has provided that only under exceptional circumstances can he attach·funds prior to judgment, and then only to have the funds preserved in the court. It is also apparent that in this case appellees, by virtue of bringing a suit in equity and obtaining the preliminary injunction, have undercut this comprehensive statutory scheme in two ways: (1) they have sought to treat the Credit Union fund as a *res*, seeking to bring the fund within the court and to impress a constructive trust on the fund; and (2) they have obtained, without a bond, not just pretrial attachment of appellants' money but the potential use of that money as well.

The question is thus presented, what justifications are offered for this substantial departure from the statutory scheme? First, appellees argue that the Credit Union funds are not really funds in the possession of the tenants; rather, the argument goes, the funds were actually relinquished by the tenants as "rent," and thus the funds belong to appellees and can be impressed with a trust for appellees' benefit. However, the evidence is to the contrary. The funds were voluntarily deposited into the Credit Union by the tenants. Both initially (when appellants' attorney had a concurrent share of power in authorizing withdrawal of funds) and at the time of the preliminary injunction, the money of a tenant could not be withdrawn from the Credit Union without the consent of that tenant. Thus at no time have the tenants relinquished control over the money, and we cannot see any appreciable likelihood that appellees will be able to prove that there were constructive payments (implying total abandonment of control) of rent.

Further, in choosing to deposit funds in the Credit Union the tenants took a responsible step in the interest of appellees, preserving the amount of money appellees claimed, something which appellees could otherwise only do by meeting the strict requirements of the District of Columbia attachment statute. Yet appellees now attempt to seize upon this action of appellants not only to get around the attachment statute, but actually to obtain relief (the use of the funds) which they could not get under that statute. No reason appears and no equitable principle is evident which would allow the depositing of the funds in this case to somehow change the nature of this dispute over rent.

9. Actions for detainer of property are provided for in 16 D.C.Code §§ 1501–1505 (1967).

10. Under some circumstances the landlord may recover double rent. 45 D.C.Code § 911 (1967).

The other main justification for granting the preliminary injunction is appellees' claim that they are on the verge of bankruptcy.[11] The argument is that, although there exist numerous legal avenues for proceeding, appellees' dire need for operating funds should allow a court of equity to take the funds of appellants before judgment and let them be used by appellees.

Whether or not in any case the financial hardship of one party is sufficient ground for undercutting a comprehensive statutory scheme, the preliminary injunction here worked to alleviate the hardship of one party by exposing the other party to great financial risk; this is an unwarranted use of the extraordinary writ of preliminary injunction.

■■ The power to issue a preliminary injunction, especially a mandatory one, should be "sparingly exercised." 7 J. W. Moore, Federal Practice ¶ 65.04 [1], p. 1627 (2d ed. 1968); O'Malley v. Chrysler Corp., 7 Cir., 160 F.2d 35 (1947). Before issuing such an injunction the court must balance the damage to both parties. Embassy Dairy v. Camalier, 93 U.S.App.D.C. 364, 367, 211 F.2d 41, 43 (1954). Thus even where denial of a preliminary injunction will harm the plaintiff, the injunction should not be issued where it would work a great and potentially irreparable harm to the party enjoined, District 50, United Mine Workers of America v. International Union, United Mine Workers of America, 134 U.S.App.D.C. ——, 412 F.2d 165 (1969), unless an overwhelming case in the plaintiff's favor is present on the merits and equities of the controversy.

If the preliminary injunction in this case were allowed to stand, the funds would be brought into the court, and may then be authorized for use by appellees. No bond was required, despite the fact that appellees' financial insecurity is such that should appellants ultimately prevail on the merits they would be unlikely to get their money back.[12] It thus does not seem consistent with equitable principles to allow the financial hardship of one party to justify so greatly shifting the risk to the other.[13]

■ From what has been said, it is clear that the preliminary injunction should not have been issued at all.[14] The

11. Appellees have also pressed a claim that individual suits are inadequate, in that the multiplicity of litigation is unduly time-consuming and burdensome. However, this argument goes to the propriety of allowing a class action for the money damages appellees claim, not to the issue of whether this particular preliminary injunction was warranted.

12. As noted, at the time of the preliminary injunction appellees' average total monthly operating deficit was $23,000; further, they were in default on their mortgage payments. The Credit Union fund of some $40,000, amassed over a ten-month period, indicates that the monthly deposits total about $4,000. Thus even if the claimed rent were paid over, it would only cover a part of appellees' monthly deficit.

13. Further, a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits. Selchow & Righter Co. v. Western Printing & Lithographing Co., 7 Cir., 112 F.2d 430 (1940). Thus especially in a suit for money a preliminary injunction generally should not require that one party turn over money to another. Schlosser v. Commonwealth Edison Co. 7 Cir., 250 F.2d 478 (1958). Here, appellees obtained virtually all they sought on the merits.

14. An additional factor which must be considered in determining whether to issue a preliminary injunction is the likelihood that the plaintiff will succeed on the merits. District 50, United Mine Workers of America v. International Union, United Mine Workers of America, 134 U.S.App.D.C. ——, 412 F.2d 165 (1969). We note that the question of a tenant's liability for rent in the face of housing regulation violations is an area of the law very much open at present. In Brown v. Southall Realty Co., D.C.C.A., 237 A.2d 834 (1968), cert. denied, 393 U.S. 1018, 89 S.Ct. 621, 21 L.Ed.2d (1969), the District of Columbia Court of Appeals held that a tenant was not evictable for nonpayment of rent when the lessor rented property which was in violation of the housing regulations of the District. In Saunders v. First National Realty Corp., D.C.C.A., 245 A.2d 836 (1968), the D. C. Court of Appeals held, however, that the existence of violations arising after the

great equitable power to enjoin a party *pendente lite* should not be exercised unless it is manifest that the normal legal avenues are inadequate, that there is a compelling need to give the plaintiff the relief he seeks, and that the injunction will not wreak greater harm on the party enjoined.

Measured by these standards, the preliminary injunction in this case cannot stand. The struggle here between the rent strikers and the landlord involves a variety of closely balanced legal and tactical approaches; the preliminary injunction quickly and unwarrantedly destroyed that balance. The landlord's remedy at law is obvious and adequate.[15] The motion for summary reversal is

Granted.

Circuit Judge McGOWAN did not participate in the consideration or disposition of this case.

---

property was leased did not abrogate the tenant's duty to pay rent. That case has been appealed to this court, and this court has allowed the appeal (Nos. 22,-405, 22,406 and 22,409).

15. *See* J. Pomeroy, Equity Jurisprudence, § 178 (5th ed. 1941).