William T. BELL and Margie Bell,
Petitioners,

v.

TSINTOLAS REALTY COMPANY,
Respondent.

James COATES, Petitioner,

v.

RUPPERT REAL ESTATE, INC.,
Respondent.

Nos. 24141, 24147, 24148.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 24, 1970.

Decided June 18, 1970.

Mrs. Virginia Spiegel Criste, Washington, D. C., for petitioners in No. 24,-141.

Mr. Willie E. Cook, Jr., Washington, D. C., for petitioner in Nos. 24,147–8. Mr. William F. Dow, III, Washington, D. C., also entered an appearance for petitioner in Nos. 24,147–8.

Mr. Herman Miller, Washington, D. C., for respondent in No. 24,141.

Mr. Joseph H. Schneider, Silver Spring, Md., for respondent in Nos. 24,-147–8.

Before WRIGHT, LEVENTHAL and ROBINSON, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

These cases are presented to us in the form of motions for stay of orders of the Landlord and Tenant Branch of the District of Columbia Court of General Sessions and the District of Columbia Court of Appeals. The orders complained of require that before being allowed to go forward with his defense or his appeal the tenant pay rent as it becomes due into the registry of the Court of General Sessions. Similar motions for stay have been presented to us in the recent past.[1] Although we have expeditiously decided them on a case-by-case basis, it now appears that the course of judicial economy would be better served by a fuller explanation of our reasoning.

The preliminary pleadings in these cases followed the pattern of the prior cases: respondent-landlord filed in the Landlord and Tenant Branch of the Court of General Sessions a standard complaint for possession based on nonpayment of

---

1. *See, e. g.,* Sands v. Liptz, No. 23,331 (remanded to the District of Columbia Court of Appeals by order of September 11, 1969).

rent[2]; petitioner-tenant filed an answer alleging that substantial housing code violations existing at the commencement of the lease rendered the lease unenforceable,[3] together with a motion for leave to proceed *in forma pauperis* and a jury demand.[4]

Of great consequence in these cases is the distinction between a complaint for possession based on nonpayment of rent and a complaint which seeks both possession and a judgment for rent in arrears.[5] One difference is that, when a claim for rent in arrears is added, the tenant will be allowed to assert a counterclaim.[6] More importantly, although the summons in a suit for possession may, as a last resort, be served by posting,[7] the tenant who is sued for rent in arrears must be served personally.[8]

2. Rule 4(c) of the Landlord and Tenant Branch provides:
   "In suits in this branch for recovery of possession of property in which the basis of recovery of possession is nonpayment of rent, tenants may set up an equitable defense or claim by way of recoupment or set-off in an amount equal to the rent claim. No counterclaim may be filed unless plaintiff asks for money judgment for rent. The exclusion of prosecution of any claims in this branch shall be without prejudice to the prosecution of any claims in other branches of the court."
   D.C.C.E. General Sessions Court Rules, Landlord and Tenant Branch, Rule 4(c).

3. Such a defense is based on Brown v. Southall Realty Co., D.C.App., 237 A.2d 834 (1968), which held that unsafe and unsanitary conditions in violation of the District of Columbia Housing Regulations existing at the beginning of the tenancy and known to the landlord rendered the lease of the premises illegal and void. A second defense based on housing code violations was established by Javins v. First National Realty Corp., 138 U.S. App.D.C. —, 428 F.2d 1071 (1970), which held that a warranty of habitability, measured by the standards set out in the D.C. Housing Regulations, is implied into leases of urban dwellings covered by the Housing Regulations, and that the defense of breach of warranty could be asserted to a suit for possession.

4. Rule 7(a) of the Landlord and Tenant Branch provides:
   "Any party entitled to a jury trial and desiring same shall file a demand for such jury trial, signed by the party or his attorney of record, accompanied by the fee herein provided, or, in the absence of such payment, upon a waiver thereof by the judge. Such demand shall be filed not later than the time for appearance of the defendant stated in the notice, or such extended time as the judge may fix by special order in the case, and, if made by the defendant, must be accompanied by an answer under oath of the defendant or his agent setting out the facts upon which his defense is based."
   D.C.C.E. General Sessions Court Rules, Landlord and Tenant Branch, Rule 7(a).

5. Rule 3 of the Landlord and Tenant Branch governs the filing of a claim for rent in arrears:
   "In the complaint there may be added a claim for the recovery of a judgment for rent in arrears and also for the recovery of personal property belonging to the plaintiff and being in the premises."
   D.C.C.E. General Sessions Court Rules, Landlord and Tenant Branch, Rule 3.

6. Rule 4(c), Landlord and Tenant Branch, *supra* Note 2. *See* Javins v. First National Realty Corp., *supra* Note 3, 138 U.S.App.D.C. at — n. 3, 428 F.2d at 1073 n. 3.

7. 16 D.C.Code § 1502 (1967) provides, in pertinent part:
   " * * * If the defendant has left the District of Columbia, or cannot be found, the summons may be served by delivering a copy thereof to the tenant, or by leaving a copy with some person above the age of sixteen years residing on or in possession of the premises sought to be recovered, and if no one is in actual possession of the premises, or residing thereon, by posting a copy of the summons on the premises where it may be conveniently read."
   Two recent surveys of this method of service made by the District of Columbia Neighborhood Legal Services Program indicate that the overwhelming majority of summonses are served by posting. For example, during September 1969, the most recent month for which the figures are available, a total of 6,340 summonses was served by the United States Marshal's office in landlord and tenant actions. Of these 6,340, 6,326 were served by posting, eight were served upon a person other

Once the suit for possession is filed, a claim for rent may not be subsequently added.[9]

### Nos. 24,147–8—James Coates v. Ruppert Real Estate, Inc.

This was the third complaint within six months for possession of the premises at 464 Neal Place, N. W. based on nonpayment of rent which respondent-landlord Ruppert Real Estate had filed against petitioner-tenant Coates. The realty company had obtained a consent judgment in the first and a default judgment in the second. After petitioner filed his answer to the present complaint, respondent countered with a "Motion to Enter Protective Order by Requiring Defendant to Deposit Rent With Clerk of Court Pending Disposition of This Case." After petitioner's opposition was filed and a hearing was held, the Court of General Sessions entered the following order:

"Motion to pay rent into court granted. Ordered that rent be paid into registry of Court—Motion to proceed in forma pauperis granted on theory that affidavit is true and that tenant has set aside $65 per month—otherwise, affidavit is not true. Tenant admits not having paid rent since November. If rent not put into registry of Court by Feb. 20, 1970, answer to be stricken. Stay not needed, since tenant has to Feb. 20. Case cert'd to Jury Calendar."

The District of Columbia Court of Appeals granted petitioner a temporary stay of that order "until a final determination of the appeal therefrom."

However, while the appeal was pending in the form of a motion for summary reversal, the continued proceedings in the Court of General Sessions resulted in summary judgment in favor of respondent-landlord. Petitioner then asked the District of Columbia Court of Appeals for a temporary stay of the order granting summary judgment. Thereupon the District of Columbia Court of Appeals ruled on the two motions before it as follows:

1. The motion for summary reversal of the order requiring that rent be paid into the court registry or that petitioner's answer be stricken was denied as moot.

2. The motion for temporary stay of the effectiveness of the summary judgment was granted on condition that petitioner pay rent from the date of the judgment into the court registry.

Our concern here is only with the latter order; we fully agree with the lower court that the grant of summary judgment eliminated the necessity for deciding the motion for summary reversal of the earlier prepayment order.

### No. 24,141—William T. Bell and Margie Bell v. Tsintolas Realty Co.

This case concerns Apartment 304 at 4030 Livingston Road, S.E. After petitioners' response to the complaint for possession was filed, the court granted respondent's motion that petitioners prepay rent into the registry of the court before being allowed to proceed. The trial court denied petitioners' request for a stay of that order and entered the following order in response to petition-

---

than the defendant, and six were served personally upon the defendant. Similarly, during the year 1967, only 56 of 117,651 complaints for possession were personally served. These figures raise the question whether a good faith effort is being made to serve tenants personally, as the statute seems to require. *See* Note, Abuse of Process: Sewer Service, 3 Colum.J. of Law & Soc.Prob. 17 (1967).

8. Paregol v. Smith, D.C.Mun.App., 103 A.2d 576 (1954). *See also* Mahoney v.

Campbell, D.C.App., 209 A.2d 791, 794 (1965), reaching the same result but introducing the additional element of waiver:

"The reasoning of the *Paregol* case is equally applicable here. In fact, this case is even stronger since appellant filed a timely objection to the lack of personal service. Without such service or waiver thereof no money judgment could be entered. * * *"

9. Paregol v. Smith, *supra* Note 8.

ers' motion for leave to proceed *in forma pauperis*:

"The Court grants the Defendant's motion to proceed in forma pauperis on appeal, provided that the rent now due, or which may hereafter accrue during the pendency of such appeal, shall be deposited into the registry of the Court, provided further, however, that the making of such deposit into the registry of the Court shall not make the question moot or otherwise affect the Defendant's appeal."

On appeal, the District of Columbia Court of Appeals deleted the back rent requirement and affixed the condition as so modified to its grant of the petition to proceed *in forma pauperis* and to its grant of a stay of the order requiring such prepayment. Thus petitioners in this case are in the position of having been ordered to prepay their rent into the registry of the court and will be granted a stay of the order or allowed to appeal *in forma pauperis* from the order only by complying with it.

■ These separate sets of facts present for our consideration the question whether and under what circumstances the Landlord and Tenant Branch of the Court of General Sessions may issue orders of the type designed to protect landlords during the period of litigation. We conclude that, although the court may, in the exercise of its equitable jurisdiction, order that future rent be paid into the registry of the court as it becomes due during the pendency of the litigation, such prepayment is not favored and should be ordered only in limited circumstances, only on motion of the landlord, and only after notice and opportunity for a hearing on such a motion.

Certainly such a protective order represents a noticeable break with the ordinary processes of civil litigation, in which, as a general rule, the plaintiff has no advance assurance of the solvency of the defendant.[10]

Moreover, imposing on litigants who are eligible to proceed *in forma pauperis* the requirement that a defense may be maintained only upon payment of a given sum of money—whether this sum is characterized as a rental prepayment or an appeal bond—seems incongruous. Recent decisions of this court, which have enhanced the opportunities for indigents to participate meaningfully in the judicial process, highlight this incongruity. In Lee v. Habib, 137 U.S.App.D.C. 403, 424 F.2d 891 (1970), we held that an indigent must be furnished a free transcript in civil cases raising a substantial question the resolution of which requires a transcript. That decision, grounded in the concept of equal protection, traced the evolution in criminal cases of the constitutional requirement that the state act affirmatively to equalize the conditions of the adversary system for the poor; we discerned a pattern of extending that process of equalization to matters arising in civil litigation: "[T]he constitutional mandate that there be no invidious discrimi-

---

10. A possible exception to the general rule against advance assurances of solvency may be found in provisions allowing prejudgment attachment and garnishment. *See, e. g.,* 16 D.C.Code § 501 *et seq.* (1967). Pre-judgment attachment is, however, a highly circumscribed tactic; in this regard we have written of the District of Columbia provisions:

"* * * [T]hose sections provide, with exceptions not here material, that [pre-judgment] attachment can only be had when there is a showing that the defendant has or is about to evade service of process or is about to transfer fraudulently the money or property.

Further, before a person can attach someone's property or money he must put up a bond in twice the amount of his claim. 16 D.C.Code § 501(e) (1967). Finally, the funds and property attached are to be preserved by the court during the pendency of the action. *Id.,* § 518."

Dorfmann v. Boozer, 134 U.S.App.D.C. 272, 276, 414 F.2d 1168, 1172 (1969). *See also* Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), holding the Wisconsin statute providing for pre-judgment garnishment in violation of procedural due process.

nation between indigent and rich litigants is being recognized in civil cases as well." 137 U.S.App.D.C. at 413, 424 F.2d at 901.

In Harris v. Harris, 137 U.S.App.D.C. 318, 424 F.2d 806 (1970), we reversed the trial court's determination that Mrs. Harris was not sufficiently poor to prosecute *in forma pauperis* her action for absolute divorce on the ground of voluntary separation. In so doing, we explicitly adhered to the Supreme Court decision in Adkins v. E. I. DuPont de Nemours & Co., 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948), construing the federal *in forma pauperis* statute [11]:

> " * * * We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty 'pay or give security for the costs . . . and still be able to provide' himself and dependents 'with the necessities of life.' * * * "

More importantly, we recognized that "[t]he obvious intent of the indigency statute is to make available to the indigent, in common with his fellow citizen, the full range of civil remedies contrived by court or legislature * * *." Harris v. Harris, *supra*, 137 U.S.App.D.C. at 322–323, 424 F.2d at 810–811.

McKelton v. Bruno, 138 U.S.App.D.C. ——, 428 F.2d 718 (1970), similarly involved the right to proceed *in forma pauperis*. We endorsed an approach even more flexible than that of Harris v. Harris, warning:

> "Finally, in assessing a litigant's ability to bear the costs of a lawsuit, the courts must pay some attention to the nature of the particular litigation. In many General Sessions cases there is not a large amount of money at stake. This is especially so in land-

lord-tenant actions, where the issue being litigated, the tenant's right to remain in his home, will often be of great personal, but of little monetary, value. Although he has a valid defense to the landlord's action, a tenant who is barely able to make ends meet, and for whom a victory would not bring a large monetary judgment, might well decide not to defend or appeal if he were forced to pay all court costs. All courts must be careful lest the financial burdens of litigation preclude the poor from litigating meritorious issues."

McKelton v. Bruno, *supra*, 138 U.S.App. D.C. at ——, 428 F.2d at 720. (Footnote omitted.)

The thrust of these cases has been to protect, under a variety of circumstances, the extent to which an indigent may have access to and participate in the judicial system. The requirement that an indigent tenant meet current rental payments in order to maintain his defense, whether or not such a requirement is explicitly labeled as a condition on the right to proceed *in forma pauperis*, has the effect of restricting access to and participation in the judicial system. We have good reason for concern when a meritorious defense cannot be litigated because a monetary barrier has been erected; not only does the individual defendant lose, but the purposes of the adversary system as a whole are frustrated.

In the context of a landlord's summary suit for possession, the prepayment requirement seems peculiarly inappropriate. Although a default in rent confers on the landlord a legally sufficient reason for instituting a suit for possession, such a suit will not and cannot legally eventuate in a judgment for rent. We have previously viewed the struggle between tenants and landlords as involving "a variety of closely balanced legal and tactical approaches" [12] and have been

---

11. 28 U.S.C. § 1915 (1964).

12. Dorfmann v. Boozer, *supra* Note 10, 134 U.S.App.D.C. at 278, 414 F.2d at 1174.

wary of tipping that balance in favor of the landlord by authorizing a rent collection procedure outside the scope of the "panoply of legal remedies" provided him by the District of Columbia Code.[13] We note also that, in the normal operation of the Landlord and Tenant Branch of the Court of General Sessions, the landlord demonstrates little need for a protective order. The vast majority of suits for possession instituted in that court result in default judgments for the landlords; in thousands of others, the tenant simply confesses judgment.[14]

Thus all these factors—that such a prepayment requirement is extraordinary in the course of civil litigation, that it has a tendency indirectly to constrict the tenant's right to proceed *in forma pauperis*, a right which equal protection considerations have recently led us to defend, that it carries with it, especially in the context of landlord-tenant litigation, a substantial risk of precluding litigation of meritorious defenses, that it also carries a substantial risk of upsetting the precarious balance of tactics in landlord-tenant litigation—lead us to examine with great care these factors underlying imposition of the prepayment requirement.

Our examination discloses, however, that there can be equally compelling considerations favoring imposition of such a requirement. The action for possession has traditionally been characterized as a summary proceeding,[15] the landlord foregoing the past due rent in order to recover possession and effect a substitution of tenants. Recent practice has, however, altered the summary nature of such actions: a tenant may, upon timely request and a statement of facts underlying his defense, proceed to a jury trial[16] with the inevitable delay in the ultimate disposition of the case[17]; a tenant may interpose the defense that no rent was owed either because the landlord breached his contractual obligations to the tenant, or because the lease was illegal and void *ab initio*.[18] The tenant, of course,

13. *Id.*, 134 U.S.App.D.C. at 275, 414 F.2d at 1171.

14. Kabaker, Tenants in Court: Few Know Their Rights, Washington Evening Star, May 4, 1970, § B at 1, col. 3. The article reports:

"* * * Last year nearly 120,000 persons were sued for eviction in Landlord-Tenant Court and about two-thirds of them lost by default. About 3,500 appeared before a judge and confessed that they owed rent; they, too, had judgments entered against them.

"A tiny fraction was tried by a judge or jury, and about one-fourth of those cases were dismissed by the landlords, usually because the tenant paid up after the suit was filed. * * *"

15. *See, e. g.*, Rudder v. United States, D.C. Mun.App., 105 A.2d 741 (1954), reversed on other grounds, 96 U.S.App.D.C. 329, 226 F.2d 51 (1955). *Rudder* construed 11 D.C.Code § 735 (1951), the statutory predecessor of 16 D.C.Code § 1501 (1967) which provides:

"When a person detains possession of real property without right, or after his right to possession has ceased, the District of Columbia Court of General Sessions, on complaint under oath verified by the person aggrieved by the detention, or by his agent or attorney having knowledge of the facts, may issue a summons to the party complained of to appear and show cause why judgment should not be given against him for the restitution of possession."

16. Rule 7(a) of the Landlord and Tenant Branch, *supra* Note 4.

17. The delay is theoretically mitigated by Rule 7(b) of the Landlord and Tenant Branch which provides:

"When a demand for jury trial has been filed as above provided, the case shall be placed upon the regular jury assignment for trial under the procedure provided for jury trials, and shall be given a preferential status on said jury assignment."

D.C.C.E. General Sessions Court Rules, Landlord and Tenant Branch, Rule 7(b). However, in spite of the preferential status, counsel for respondent in No. 24,141 represented that the delay ranged between three and six months.

18. In Brown v. Southall Realty Co., *supra* Note 3, the defense was limited to those situations in which the housing defects existed at the commencement of the lease and which were known to the landlord. The decision of this court in Javins v.

remains in possession during the pendency of a suit for possession.

In short, the landlord has lost the advantage of the summary proceeding and is instead exposed to a prolonged period of litigation without rental income. And, realistically, the likelihood of this occurring cannot be ignored when the tenant has been allowed to proceed *in forma pauperis.*[19]

We have little doubt that the Landlord and Tenant Branch of the Court of General Sessions may fashion an equitable remedy to avoid placing one party at a severe disadvantage during the period of litigation.[20] Moreover, we foresee that, normally, the burden of such a prepayment order on the tenant will be neither heavy nor unexpected: to require that the tenant meet current rental payments during the litigation period is to require only that he fulfill an obligation

which he voluntarily assumed at an earlier date when he entered into the lease. As long as the tenant remains in possession and no finding of a substantial housing code violation has been made, we are unwilling to absolve the tenant completely of his obligation under the rental contract.

Thus, in recognition of the emerging non-summary nature of the suit for possession, the concomitant severe disadvantage in which the landlord has been placed during such litigation, and the potential for dilatory tactics which judicial innovation in this area has bred, we conclude that the prepayment of rent requirement as a method of protecting the landlord may be employed in limited fashion. Indeed, we have already endorsed prepayment of rent pending disposition of landlord-tenant litigation involving the breach of warranty defense.[21]

First National Realty Corp., *supra* Note 3, held that the obligation of the landlord to the tenant to maintain the premises in accordance with all applicable law is a continuing obligation. The applicable law is the Housing Regulations, which imply a warranty of habitability into leases of all housing that they cover. We are not unaware that, by expanding the circumstances under which a Housing Regulations defense is applicable, we have correspondingly increased the incentive, absent a protective order or its equivalent, to assert such a defense, remain in possession, and profit from the delay, even in non-meritorious causes.

19. We are not persuaded, as was the trial judge in Nos. 24,147-8, that the affidavit of poverty would not suffice for *in forma pauperis* status if the projected rent payment were not made. Since there is an allowable *range* of poverty for *in forma pauperis* purposes, it would be surprising if any one expenditure were always the decisive factor.

20. *See, e. g.,* Valois, Inc. v. Thorne, D.C. Mun.App., 86 A.2d 530, 532 (1952), tracing the development of the general jurisdiction and concomitant equitable jurisdiction of the District of Columbia Municipal Court (renamed the Court of General Sessions, effective January 1, 1963), relying on Klepinger v. Rhodes, 78 U.S. App.D.C. 340, 140 F.2d 697, cert. denied,

322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568 (1944); Brewer v. Simmons, D.C. App., 205 A.2d 60 (1964).

21. Javins v. First National Realty Corp., *supra* Note 3, 138 U.S.App.D.C. at —— n. 67, 428 F.2d at 1083 n. 67:

"Appellants in the present cases offered to pay rent into the registry of the court during the present action. We think this is an excellent protective procedure. If the tenant defends against an action for possession on the basis of breach of the landlord's warranty of habitability, the trial court may require the tenant to make future rent payments into the registry of the court as they become due; such a procedure would be appropriate only while the tenant remains in possession. The escrowed money will, however, represent rent for the period between the time the landlord files suit and the time the case comes to trial. In the normal course of litigation, the only factual question at trial would be the condition of the apartment during the time the landlord alleged rent was due and not paid.

"As a general rule, the escrowed money should be apportioned between the landlord and the tenant after trial on the basis of the finding of rent actually due for the period at issue in the suit. To insure fair apportionment, however, we think either party should be permitted to amend its complaint or answer

■ However, not all litigation in which the tenant requests a jury or asserts a defense based on violation of the Housing Regulations will be equally appropriate for imposition of the protective order, and it is not our intent to promulgate so inflexible a rule. Indeed, we promulgate no rule at all, believing that the preferable course is to leave the decision on a case-by-case basis to the discretion of the trial judge. We advance the following to guide that decision, although not intending it as an exhaustive discussion.

■ The primary distinction to be made is between the preliminary and appellate stages of the litigation. Certainly if the landlord has been accorded a summary judgment, as in No. 24,147, or other judgment on the merits, the case for requiring prepayment of rent is strengthened.[22] Of course, if the appeals court is of the opinion that the grant of summary or other judgment is erroneous on its face, it may dissolve the prepayment order or its equivalent on a motion for summary reversal or stay or other seasonable motion.[23] And, similarly, if the tenant prevails at the trial level, any prepayment order will be discontinued.

The crux of the issue, however, is under what circumstances prepayment of rent may be imposed *prior to* a decision on the merits, and it is in this situation that the trial court will be faced with closely balanced equities.

■■ We favor the approach of the court in these cases in granting a protective order only when the tenant has either asked for a jury trial or asserted a defense based on violations of the housing code, and only upon motion of the landlord and after notice[24] and opportunity for oral argument by both parties. We feel the protective purpose of the rent payment requirement ordinarily will be well served simply by requiring only future payments falling due after the date the order is issued to be paid into the court registry. Any inclusion of back rent alleged to be due would depart from this protective purpose, since the landlord cannot recover back rent in a suit for possession, and would be in the nature of a penalty on the tenant. In light of our previous discussion, the protective order will be adjudged independently of the right to a jury trial and the right to proceed *in forma pauperis*: it may issue only when the landlord has

at any time before trial, to allege a change in the condition of the apartment. In this event, the finder of fact should make a separate finding as to the condition of the apartment at the time at which the amendment was filed. This new finding will have no effect upon the original action; it will only affect the distribution of the escrowed rent paid after the filing of the amendment."

22. Rather than prepayment of rent, the usual procedure after judgment is to require posting of a bond. General Sessions Civil Rule 73(a) (supersedeas and other bonds):
"* * * When the defendant in an action to recover possession of real estate seeks such review, the undertaking shall also provide for the payment of all intervening damages to the property sought to be recovered and compensation for its use and occupation from the date of the judgment to the date of the satisfaction thereof if the judgment is not reversed."

D.C.C.E. General Sessions Court Civil Rule 73(a).

23. This is in keeping with the generally accepted criteria for granting a stay or injunction pending appeal, in which inquiry is made into the merits of petitioner's case:
"* * * Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? Without such a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review. * * *"
Virginia Petroleum Jobbers Ass'n v. F.P.C., 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958).

24. We feel that the notice requirement, in cases where counsel has entered an appearance on behalf of the tenant, may be satisfied by simply notifying counsel; if the tenant is not so represented, he must be personally served with the notice.

demonstrated an obvious need for such protection.

█ In making a determination of need, the trial court may properly consider the amount of rent alleged to be due, the number of months the landlord has not received even a partial rental payment, the reasonableness of the rent for the premises, the amount of the landlord's monthly obligations for the premises, whether the tenant has been allowed to proceed *in forma pauperis*, and whether the landlord faces a substantial threat of foreclosure.

█ Even if the landlord has adequately demonstrated his need for a protective order, the trial judge must compare that need with the apparent merits of the defense based on housing code violations. Relevant considerations would be whether the housing code violations alleged are *de minimis* or substantial, whether the landlord has been notified of the existence of the defects and, if so, his response to that notice, and the date, if known, of the last repair or renovation relating to the alleged defect.

█ We express the view that, in the ordinary course of events, if prepayment of rent is required, the tenant will be called upon to pay into the court registry each month the amount which he originally contracted to pay as rent. However, there are circumstances likely to arise which, in our judgment, require that the trial court consider imposition of a lesser amount. Certainly a lesser amount would be desirable when the tenant makes a very strong showing that the condition of the dwelling is in violation of Housing Regulations norms. For example, he may adduce in support of his defense a finding of violation of an order to repair which the District of Columbia issued to the landlord and which the landlord has not acted upon within a reasonable time.[25] Similarly, he may demonstrate that some portion of his potential payment of rent was instead expended on repairs to the premises.[26] We are concerned also that a change in the tenant's financial condition may render the original burden so heavy as to preclude litigation of meritorious defenses. Again, we suggest that in such a case the court investigate the possibility of providing the landlord the protection of reasonable interim rent short of the agreed upon rent.[27] For instance, with mortgaged property the court may impose a payment requirement less than

25. Of course, a Housing Regulations defense may be asserted without official corroboration. *See* Javins v. First National Realty Corp., *supra* Note 3, 138 U.S.App.D.C. —— at n. 62, 428 F.2d at 1082 n. 62.

26. We note the recent decision of the Supreme Court of New Jersey in Marini v. Ireland, 56 N.J. 130, 265 A.2d 526, 535 (1970):
   "If, therefore, a landlord fails to make the repairs and replacements of vital facilities necessary to maintain the premises in a livable condition for a period of time adequate to accomplish such repair and replacements, the tenant may cause the same to be done and deduct the cost thereof from future rents. * * * This does not mean that the tenant is relieved from the payment of rent so long as the landlord fails to repair. The tenant has only alternative remedies of making the repairs or removing from the premises upon such a constructive eviction."

27. In Thompson v. Mazo, 137 U.S.App. D.C. 137, 221, 421 F.2d 1156, 1161 (1970), we considered the requirement of 16 D.C.Code § 1504 (1967) that one who pleads title as a defense in a possessory action must enter into an "undertaking, with sufficient surety," before the case will be certified to the United States District Court from the Court of General Sessions. We concluded that such an undertaking need not be in the form of a money bond, but could be satisfied by monthly payments in escrow:
   " * * * The guiding principle for the court is, of course, to arrive at a reasonable monthly payment which will, at one and the same time, impose a fair obligation on the defendant, permit the case to be heard on the merits, and assure the plaintiff that if he wins he will, having been denied interim possession, at least receive reasonable intervening rent. * * * "

the agreed upon rent but equivalent in amount to the cost of the premises to the landlord of principal, interest, taxes, and whatever proportion of the utilities payments the landlord has assumed, or make every effort to find some mutually tolerable amount.

If such prepayment of rent is required, the question arises as to the disbursement of the fund after the conclusion of the litigation. It is proper practice for the trial court to specifically find the amount of rent in arrears, even when the suit is one for possession and not one for back rent.[28] One possible finding, of course, is that the entire amount cited by the landlord is in arrears because no housing code violations or only *de minimis* violations existed during the period at issue. Even in this event, we would be unwilling to have the prepayment fund applied directly against the unpaid rent; we have noted that a suit for possession cannot, by its very nature, eventuate in a judgment for back rent, and we hesitate, at least in the absence of personal service, to so commingle the landlord's remedies as to confer an undue benefit.

However, if the landlord is exonerated of all substantial housing code violations, we would allow the fund to be paid to the landlord as rental for the litigation period, indulging the assumption that, absent proof from the tenant, the condition of the premises during the period at issue continued unchanged throughout the litigation period and that no substantial housing defects have come into existence. Conversely, if the finder of fact determines that the housing code violations have nullified the obligation of the tenant to pay any rent for the period at issue, the tenant may recover the escrow fund on the assumption that, absent convincing proof from

the landlord, housing code violations sufficient to nullify the obligation to pay rent have continued. If the trial results in a determination that a portion of the rent is owing the landlord, that same proportion will be applied in dividing the escrowed funds between the landlord and the tenant. If either party seeks to show that the condition of the premises changed during the litigation period, the procedures set out in Javins v. First National Realty Corp., 138 U.S.App.D.C. ——, —— n. 67, 428 F.2d 1071, 1083 n. 67, (1970) must be followed:

> " * * * To insure fair apportionment, however, we think either party should be permitted to amend its complaint or answer at any time before trial, to allege a change in the condition of the apartment. In this event, the finder of fact should make a separate finding as to the condition of the apartment at the time at which the amendment was filed. This new finding will have no effect upon the original action; it will only affect the distribution of the escrowed rent paid after the filing of the amendment."

Finally, if the tenant abandons the premises before the case goes to trial,[29] the landlord will have obtained possession—the relief he sought in court —without a judicial resolution of (1) the condition of the apartment and (2) the amount of rent actually due. In such a case, any money paid into court by the tenant should be returned to the tenant unless the landlord promptly goes to court to seek a money judgment for rent actually due during the period rent was being paid into court.

These cases are remanded to the District of Columbia Court of Appeals for reconsideration in the light of this opinion.

So ordered.

---

28. George Y. Worthington & Son Management Corp. v. Levy, D.C.App., 204 A.2d 334 (1964).

29. Even if a default judgment were entered in a case where the tenant had paid some rent into court, the judgment could not be *res judicata* for the amount of rent actually due during the period rent was being paid into court. *See* Javins v. First National Realty Corp., *supra* Note 3, 138 U.S.App.D.C. at —— n. 67, 428 F.2d at 1083 n. 67.