**MEYER JEWELRY COMPANY, a Michigan Corporation, and Marjorie R. Siegel, Plaintiffs,**

v.

**MEYER HOLDINGS, INC., a Florida Corporation, James V. McTevia and Philip T. Warren, Defendants.**

Civ. A. No. 95–40210.

United States District Court, E.D. Michigan, Southern Division.

Nov. 20, 1995.

Howard J. Gourwitz, Jonathan T. Walton, Jr., Gourwitz & Barr, Southfield, MI, for Meyer Jewelry Company, Marjorie R. Siegel.

Ronald L. Rose, Dykema Gossett, Detroit, MI, Dennis M. Haffey, Dykema Gossett, Bloomfield Hills, MI, for James V. McTevia.

David M. Black, Sommers, Schwartz, Southfield, MI, for Philip T. Warren, Meyer Holdings, Incorporated.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND FOR APPOINTMENT OF A RECEIVER

GADOLA, District Judge.

Before this court is defendant, Meyer Holdings, Inc.'s, motion for a preliminary injunction and for the appointment of a receiver. This matter was scheduled for hearing on October 5, 1995, but pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Jan. 1, 1992), this court decided to dispense with oral argument, as it was not necessary to determine this motion. At the parties request, this court permitted the parties to file supplemental affidavits and briefs. Upon review of the record and the relevant authorities, this court will deny this request for a preliminary injunction and for appointment of a receiver.

### I. Factual Background

On June 22, 1995, the plaintiffs, Meyer Jewelry Company and Marjorie R. Siegel, filed a verified complaint against the defendants, Meyer Holdings, James V. McTevia and Philip T. Warren, seeking equitable and monetary relief arising from McTevia's alleged breach of fiduciary duties and acts of fraud and misrepresentation committed while he was acting as a consultant for Meyer Jewelry. The complaint alleged that McTevia had an ulterior motive in providing his consulting services, namely, to take control of the operations and ultimately the ownership of Meyer Jewelry. His primary means of gaining control, the complaint alleged, was to misuse the trust and confidence placed in him by Marjorie Siegel and her late husband Bernard R. Siegel.

On May 8, 1992, Meyer Jewelry entered into a contract with McTevia & Associates, Inc., McTevia's management consulting firm, pursuant to an engagement letter which set forth the nature and scope of consulting services to be provided. Bernard Siegel, who

had engaged in several personal and professional dealings with McTevia prior to 1992, retained McTevia & Associates to assist the Meyer Jewelry board of directors to determine "whether it is in the best interest of the company to continue operating for a temporary or extended period of time while seeking a buyer, or alternatively, to orchestrate a peaceful liquidation." At that time, the board of directors consisted of Bernard Siegel; Marjorie Siegel, his wife; Gene F. Anderson and David S. Mintzer, executive managers at Meyer Jewelry; and Erwin S. Simon, legal counsel to Meyer Jewelry.

On May 11, 1992, McTevia was formally elected President and Chief Operating Officer of Meyer Jewelry by the board of directors, pursuant to the engagement letter. At that time, the number of members on the board of directors was reduced from five to two, leaving Bernard Siegel and Marjorie Siegel as the sole directors. On June 2, 1992, McTevia was added to the board of directors.

On September 16, 1992, Marjorie Siegel resigned her positions as officer and director of the board, leaving Bernard Siegel and McTevia as Meyer Jewelry's sole directors and executive officers. At the October 21, 1992 annual meetings of the shareholders and the board of directors, Bernard Siegel and McTevia were re-elected as directors of the company and McTevia was re-elected as the President and Chief Operating Officer and elected Secretary of Meyer Jewelry.

In late 1993, several events and transactions occurred which form the basis for the complaint and the counter-claims filed in this action. On September 24, 1993, the board of directors resolved by consent in lieu of special meeting to purchase and redeem the 2,940.145 shares of Meyer Jewelry common stock held by the Meyer Rosenbaum Trust at a price of $285.67 per share. On November 4, 1993, Bernard Siegel executed a First Codicil on his Will appointing McTevia as his Personal Representative and a First Amendment to the Bernard Siegel Trust Agreement which immediately appointed McTevia joint Trustee with Bernard Siegel and provided that McTevia would become the sole Trustee upon Siegel's death.

On November 19, 1993, Marjorie Siegel sold 381.481 shares of Meyer Jewelry to Meyer Holdings for $108,977.67, at the $285.67 per share price set by the independent Merrill Lynch appraisal used to value the shares in the Meyer Rosenbaum Trust redemption. Meyer Holdings was owned at that time solely by the James V. McTevia Trust, of which McTevia was the Trustee. The shares transferred constituted approximately 24% of the outstanding common stock of Meyer Jewelry. Through this transaction, McTevia effectively became a minority shareholder in Meyer Jewelry. The plaintiffs claim that this sale of stock was a fraud and was for inadequate consideration and that it occurred as a result of McTevia's breach of his fiduciary duties as officer and director to Meyer Jewelry and Bernard Siegel.

On February 25, 1994, Bernard Siegel died as a result of a terminal illness at the age of 80. On March 1, 1994, Marjorie Siegel was elected director of Meyer Jewelry to fill the vacancy left by Mr. Siegel. She was also elected to the positions of Chair of the Board, Chief Executive Officer and Treasurer.

Several months later, McTevia began negotiations, at the behest of Marjorie Siegel and on behalf of Meyer Jewelry, with various minority shareholders (the "Schwartz Group") to redeem their shares and to settle minority shareholder claims that they had threatened against Meyer Jewelry.[1] McTevia proposed that Meyer Holdings purchase the stock, amounting to approximately 23 percent of the ownership of the company, and a tentative verbal agreement was reached to purchase those shares for $750,000.00. Following the advice of Meyer Jewelry's attorneys, Marjorie Siegel retained independent counsel and rejected McTevia's

---

1. The Schwartz Group consisted of Stuart M. Schwartz, Robert E. Schwartz and Bunny R. Fierman as trustee of the Bunny R. Fierman Trust. This group, who are relatives of the original owner of Meyer Jewelry, Meyer Rosenbaum, apparently had a contentious relationship with Marjorie Siegel and wished to have their shares redeemed. The Schwartz Group threatened litigation based on their belief that Marjorie Siegel was using Meyer Jewelry for her own personal benefit in breach of her fiduciary duty to their minority interests.

proposal to allow McTevia or Meyer Holdings to purchase the minority shares.

On September 22, 1994, Marjorie Siegel, as Meyer Jewelry's majority shareholder, removed McTevia from the board of directors and from his officer positions and terminated all services of McTevia & Associates and Meyer Holdings. Ms. Siegel elected Brian L. Siegel as director and as Secretary–Treasurer.

On February 13, 1995, McTevia transferred his ownership of Meyer Holdings to Philip T. Warren, a former business partner of McTevia and Bernard Siegel, allegedly in exchange for a release from a debt of approximately $580,000.00.[2] On March 6, 1995, Warren wrote to Marjorie Siegel, claiming ownership of the 381.481 shares of Meyer Jewelry common stock held by Meyer Holdings and requesting financial information under the Michigan statute regarding the rights for benefit of minority shareholders, M.C.L.A. § 450.1487.

On May 18, 1995, Meyer Jewelry consummated an agreement with the Schwartz Group to purchase their holdings of Meyer Jewelry stock. This transaction was designed to parallel the previously unconsummated transaction negotiated by McTevia. Of the $700,000 consideration offered for the sale, $100,000 was allocated towards the stock price and $600,000 was paid as a settlement of claims.

On June 22, 1995, the plaintiffs filed a complaint, asserting various claims for fraud, misrepresentation and breach of fiduciary duty, and seeking rescission of the November 19, 1993 sale of the 23.6 percent of Meyer Jewelry stock to McTevia and Meyer Holdings. Plaintiffs also requested a preliminary injunction to prevent the defendants Warren or Meyer Holdings from selling the 23.6 percent stock interest acquired by Warren through the transfer of Meyer Holdings or from exercising any of the privileges associated with the ownership of that stock. This court denied plaintiffs' motion for preliminary injunction on July 28, 1995 following an evidentiary hearing.

Defendant McTevia filed a verified counterclaim on July 17, 1995, seeking contribution and indemnity from Marjorie Siegel for any liability in this action and alleging breach of contract, fiduciary duty, statutory mismanagement, misrepresentation, and tortious interference with contract and expectancy. Defendants Meyer Holdings and Warren also filed a counterclaim on July 17, 1995 alleging breach of fiduciary duty and asserting statutory actions for records and financial information and for dissolution or appraisal. On September 1, 1995, defendant Meyer Holdings filed the present motion for a preliminary injunction and appointment of a receiver to enjoin various alleged acts of mismanagement and breaches of fiduciary duty to minority shareholders. Meyer Holdings alleges that Marjorie Siegel's $200,000 salary is grossly excessive in light of the corporation's ongoing losses and her lack of business experience. It also challenges the use of corporate funds of Meyer Jewelry to purchase the shares of the Schwartz Group for the benefit of the majority shareholder, Marjorie Siegel, and the validity of the consideration paid for the settlement of claims. Meyer Holdings seeks an injunction preventing Meyer Jewelry from paying any further salary to Marjorie Siegel, requiring her to disgorge any amount of that salary which was previously paid, and prohibiting Meyer Jewelry from paying any further sums to the Schwartz Group pursuant to the May 18, 1995 Stock Purchase and Settlement Agreements. It also requests the appointment of a receiver to manage Meyer Jewelry pending litigation.

## II. Applicable Standards

■ The decision of whether or not to issue a preliminary injunction is rests within the sound discretion of the district court. *CSX Transportation, Inc. v. Tennessee State Board of Equalization*, 964 F.2d 548, 553 (6th Cir.1992). This discretion is guided by traditional equitable principles which require the consideration of several factors: (1) whether the movant has a substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the

---

**2.** This court's July 28, 1995 Order concluded that because the debt was not enforceable under Michigan law, there was no consideration for the transfer of Meyer Holdings.

injunctive relief is not ordered; (3) whether the requested injunction will cause substantial harm to third parties; and (4) whether the interests of the public are served by issuance of the injunction. *CSX Transportation,* 964 F.2d at 550–51; *Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 262 (6th Cir. 1988); *In re DeLorean Motor Company,* 755 F.2d 1223 (6th Cir.1985). Because an injunction is an "extraordinary remedy," the district court should not invoke its injunctive powers unless the movant clearly meets its burden of persuasion as to the above listed factors. *Lapeer County Medical Care Facility v. State of Michigan,* 765 F.Supp. 1291, 1296 (W.D.Mich.1991); *Detroit Newspaper Publishers Assn. v. Detroit Typographical Union,* 471 F.2d 872, 876 (6th Cir.1972). A request for preliminary injunction will generally be denied if there is an adequate remedy for the movant at law. *EBSCO Industries, Inc. v. Lilly,* 840 F.2d 333, 335 (6th Cir.1988).

■ Similarly, the appointment of a receiver is an extraordinary equitable remedy that is justified in only extreme situations. *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 316 (8th Cir.1993); *Macon Lumber Company v. Bishop and Collins,* 229 F.2d 305, 307 (6th Cir.1956). Factors typically influencing the district court's exercise of discretion include the existence of a valid claim by the moving party; the probability that fraudulent conduct has occurred or will occur to frustrate the claim; imminent danger that property will be lost, concealed, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and the likelihood that appointment of a receiver will do more harm than good. *Aviation Supply Corp.,* 999 F.2d at 316–17. Receivership is generally imposed upon a solvent corporation when there is "imminent danger of loss" to stockholders and there is no adequate remedy at law. *Macon Lumber,* 229 F.2d at 307.

## III. Discussion

Upon review of the applicable standards and the facts alleged by Meyer Holdings in support of its motion for preliminary injunction and appointment of receiver, this court finds that this equitable relief is not warranted. This court bases its decision on the following conclusions.

### A. Likelihood of Success on the Merits

■ To succeed in its claims under the Michigan Business Corporations Act, Meyer Holdings must establish that the acts of those in control of the corporation are "illegal, fraudulent, or willfully unfair and oppressive." M.C.L.A. § 450.1489(1). To establish a breach of statutory fiduciary duty, Meyer Holdings will have to demonstrate that Marjorie Siegel, as the controlling shareholder of Meyer Jewelry, failed to discharge her fiduciary duty to the minority shareholders of Meyer Jewelry in good faith, with the care of an ordinarily prudent person in similar circumstances and in a manner reasonably believed to be consistent with the best interests of the corporation. *See* M.C.L.A. § 450.1541a(1).[3]

■ Meyer Holdings has not demonstrated a substantial likelihood of proving that the corporate acts complained of, namely the Schwartz Group transaction and Marjorie Siegel's salary, constitute breaches of fiduciary duty. With respect to the Schwartz Group transaction, this court takes notice of the fact that the May 18, 1995 transaction was nearly identical in substance to the unconsummated agreement negotiated in 1994 by McTevia, who was president of Meyer Holdings at that time. The evidence presented demonstrates that the threats of litigation by the Schwartz Group were as real in 1995 as they were when McTevia was negotiating the unconsummated agreements in 1994. Meyer Holdings has not demonstrated that the ultimate settlement agreement was inimical to the interests of the corporation.

---

**3.** The standard that Meyer Holdings must meet to obtain dissolution of the corporation as a remedy under its complaint is even higher. To justify dissolution of a corporation under Michigan law based on illegal, fraudulent, willfully unfair or oppressive acts of corporate officers or directors, a plaintiff must prove "exceptional cir-cumstances, including financial loss, corporate paralysis, mismanagement and deterioration of property." *Barnett v. International Tennis Corp.,* 80 Mich.App. 396, 417, 263 N.W.2d 908 (1978) ("The ultimate test is whether corporate ruin will inevitably follow continuance of present management.").

The fact that Marjorie Siegel allegedly gained from the transaction at the expense of Meyer Holdings does not alter this conclusion. Section 450.1545a of Michigan's Business Corporation Act provides:

> A transaction in which a director or officer is determined to have an interest shall not, because of the interest, be enjoined, set aside, or give rise to an award of damages or other sanctions, in a proceeding by a shareholder or by or in the right of the corporation, if the person interested in the transaction establishes ... [that] the transaction was fair to the corporation at the time entered into.

The justifications offered for settlement agreement and the stock purchase from the Schwartz Group demonstrate that the transaction was fair to Meyer Jewelry both before and on May 18, 1995. Meyer Holdings has not demonstrated a substantial likelihood of success on its breach of fiduciary duty claim.

Similarly, Meyer Holdings has failed to establish that Marjorie Siegel's salary is unlawful or contrary to the interests of Meyer Jewelry. Section 450.1545a provides that transactions relating to the compensation of directors or officers "shall not be enjoined, set aside, or give rise to an award of damages or other sanctions in a proceeding by a shareholder" unless it is shown that the compensation was unreasonable at the time. M.C.L.A. § 450.1545a. Meyer Holdings has not presented sufficient evidence to prove that Marjorie Siegel's salary is or was excessive or unreasonable. It should be noted that, while he was an officer and director of Meyer Jewelry and president of Meyer Holdings, McTevia approved the $200,000 salary that Marjorie Siegel is currently paid. In the absence of any evidence showing that Marjorie Siegel's currently salary was unreasonable at the time it was initially awarded, Meyer Holdings cannot demonstrate a substantial likelihood of success on the merits of its breach of fiduciary duty claim.

### B. Irreparable Harm and Availability of Adequate Remedy at Law

▮ The corporate wrongs alleged by Meyer Holdings in its motion are based upon transactions involving the payment of certain sums of money. Given the fact that the amount of money involved in these transactions is subject to ready calculation, Meyer Holding's complaints are clearly compensable by money damages. The presence of this legal remedy militates strongly against injunctive relief. *EBSCO Industries,* 840 F.2d at 335.

The availability of money damages in this case also serves to demonstrate that Meyer Holdings will not be irreparably harmed by a denial of injunctive relief. Even if this court assumed that Marjorie Siegel is attempting to "freeze out" Meyer Holdings and that her actions have been arbitrary and capricious as alleged, Meyer Holdings would still have the protection afforded by the Michigan Business Corporations Act to claim damages. Clearly, equitable relief is not necessary to prevent irreparable harm to Meyer Holdings.

### C. Substantial Harm to Third Parties and the Public Interest

▮ Meyer Jewelry and Marjorie Siegel contend that they and their employees would be substantially harmed and that the public interest would not be served by an injunction. If the payments to the Schwartz Group under the settlement agreement were enjoined, the plaintiffs assert, the company would face an immediate threat of litigation. Further, they assert that the disruption that this relief would cause to the approximately 170 employees and numerous vendors of the company does not serve the public interest. Finally, they contend that it would be unfair to require Marjorie Siegel to continue her work as an officer of Meyer Jewelry without pay. Meyer Holdings does not specifically address these arguments.

This court finds that the requested injunctive relief does not serve the public interest and that the threat of litigation from the Schwartz Group would work a substantial and unjustified hardship on the plaintiffs. As discussed above, any public interest in protecting minority shareholders that might be served by judicial intervention into corporate affairs, will be adequately preserved by an award of damages or similar legal relief at the conclusion of this litigation.

As the discussion above demonstrates, this case is not the sort of "extreme" case which warrants a preliminary injunction. It is also not the type of situation which justifies the appointment of a receiver. The facts indicate that Meyer Jewelry is a viable business and that it has been reducing its overall losses in the past years. The deleterious effects of a receivership on the day to day operation of Meyer Jewelry clearly show that a receivership would result in more harm than good in this case. This court notes the reticence of the Michigan courts to appoint receivers to manage the affairs of a solvent corporation:

> In the absence of insolvency, or threatened insolvency, the courts are reluctant to appoint a receiver for a corporation at the suit of a stockholder on the ground of fraud or mismanagement.... At least where other remedies exist for the acts complained of, the court, ordinarily, will refuse to appoint a receiver merely because of past fraudulent acts or mismanagement on the part of the officers or directors of the corporation.

7 Michigan Law and Practice, *Corporations* § 505. As discussed above, Meyer Holdings has an adequate legal remedy for the acts of mismanagement and oppression it alleges. Moreover, Meyer Holdings has not established that there is an imminent threat to its investment in Meyer Jewelry without the intervention of a receiver. Accordingly, this court finds a receivership inappropriate.

### ORDER

Therefore, it is hereby **ORDERED** that defendant Meyer Holdings, Inc.'s motion for preliminary injunction and for appointment of a receiver is **DENIED**.

**SO ORDERED.**